611 P.2d 1101

**STATE of New Mexico, Petitioner,**

v.

**Emilio NARANJO, Respondent.**

**No. 12847.**

Supreme Court of New Mexico.

May 8, 1980.

Jeff Bingaman, Atty. Gen., Marcia E. White, Asst. Atty. Gen., Santa Fe, for petitioner.

Ira Robinson, Dist. Atty., Judd S. Conway, Asst. Dist. Atty., Albuquerque, amicus curiae.

Kegel & McCulloch, Ralph Montez, Santa Fe, Marchiondo & Berry, Albuquerque, for respondent.

## OPINION

PER CURIAM.

Defendant Emilio Naranjo was charged with perjury in violation of Section 30–25–1, N.M.S.A.1978. Defendant was convicted and appealed to the Court of Appeals. The Court of Appeals reversed. This Court granted certiorari and now affirms in part and reverses in part.

Four points were raised on appeal to the Court of Appeals and in the petition for writ of certiorari filed with this Court:

(1) Did the trial court lack jurisdiction because the attorney general did not have the right or power to appoint a special assistant?

(2) Is the indictment sufficient upon which to charge perjury?

(3) Was the admission of the Morales judgment of acquittal into evidence reversible error?

(4) Was the evidence introduced by the prosecution sufficient to support a verdict of guilty?

*Point 1.* We hold that the trial court had jurisdiction because the attorney general had the right and power to appoint a special assistant.

The facts relevant to Point 1 are: Moises Morales was arrested and charged with possession of marijuana. *State v. Morales*, Rio Arriba County No. 4510 (changed to Santa Fe County No. 9739, pursuant to a change of venue). He was tried and acquitted of this charge. The defendant in this case was Sheriff of Rio Arriba County during the prosecution of *State v. Morales*, and testified for the State. Subsequent to the acquittal of Morales, complaints were made to

Toney Anaya, then Attorney General of the State of New Mexico, that defendant had committed perjury in the testimony he gave during the Morales trial.

The district attorney for the First Judicial District and the attorney general recused their offices from investigating or prosecuting defendant for the alleged acts of perjury because of conflicts of interest within their offices. This fact was stipulated to by the parties. The attorney general appointed Joseph Caldwell, then district attorney for the Eighth Judicial District, as a special attorney general to investigate and prosecute, if necessary, the perjury complaints.

After investigation, Caldwell determined that the evidence should be presented to the Grand Jury. Judge Donnelly administered the Oath of Secrecy to Caldwell. The Grand Jury was convened and qualified, and Caldwell presented evidence before it. An indictment charging defendant with perjury was filed and he was arraigned.

Defendant filed motions to dismiss the indictment because of claimed conflicts of interest and improprieties in the appointment of a special prosecutor by the attorney general. The trial court denied the motions and entered specific findings of fact and conclusions of law. The trial judge found that the district attorney for the First Judicial District and the attorney general disqualified their offices from investigating and prosecuting this case or assisting therein because assistants had participated in the prosecution and defense of Moises Morales' case, in which the alleged perjured statements had been made by defendant. The court concluded that the attorney general had the power and authority to appoint a special prosecutor, that the appointment of Caldwell as special prosecutor was valid, that Caldwell acted within the scope of his authority, and that the indictment was valid.

The Court of Appeals stated in its opinion that the district attorney for the First Judicial District had not literally and statutorily disqualified himself and that therefore the attorney general lacked the right and power to proceed with the prosecution. That is a much too restricted and technical interpretation of the stipulation entered into between the special prosecutor and defendant's attorney, and of Sections 8–5–2(B) and 8–5–3, N.M.S.A.1978, and Section 8–5–5, N.M.S.A.1978 (Cum.Supp.1979).

The Court of Appeals concentrated on Paragraph 18 of the stipulation, which stated that the deputy district attorney had informed the special prosecutor that he felt that the district attorney's office was disqualified from prosecuting defendant. The Court of Appeals opinion overlooks a portion, at least, of the other eighteen paragraphs of that stipulation, particularly Paragraphs 2, 17 and 19. Those paragraphs of the stipulation leave no doubt that the members of the district attorney's office and staff were involved in the prosecution of Cause No. 4510 and that attorneys for the prosecution and the defendant and defendant himself, would appear as witnesses in the present case. Having been involved in those previous prosecutions, they were disqualified from acting in the present case.

Sections 8–5–2(B), 8–5–3 and 8–5–5 provide:

*8–5–2. Duties of attorney general.*

Except as otherwise provided by law, the attorney general shall:

. . . . .

B. prosecute and defend in any other court or tribunal all actions and proceedings, civil or criminal, in which the state may be a party or interested when, in his judgment, the interest of the state requires such action or when requested to do so by the governor;

*8–5–3. [Action in civil and criminal cases.]*

That upon the failure or refusal of any district attorney to act in any criminal or civil case or matter in which the county, state or any department thereof is a party or has an interest, the attorney general be, and he is hereby authorized to act on behalf of said county, state or any department thereof, if after a thorough investigation, such action is ascertained to be

advisable by the attorney general. Provided, that the attorney general shall, upon direction of the governor, investigate any matter or matters in any county of the state in which the county, state or any department may be interested. After such investigation, the attorney general be, and he is hereby authorized to take such action as, in his opinion, conditions warrant. The cost of such investigation shall be paid out of the general fund of the county wherein such investigation shall have been made, and the costs of any prosecution arising out of such investigation shall be paid as are the costs in cases prosecuted by district attorneys.

*8–5–5. Assistant attorneys general; other employees; appointment.*

A. The attorney general may appoint a deputy attorney general, and as many other assistant attorneys general together with stenographic, clerical and other necessary employees on a full- or part-time basis, at salaries to be fixed by him within budget allowances and appropriation limits, *as the business of the department shall require,* and who shall hold office during the pleasure of the attorney general. The deputy attorney general and the assistant attorneys general shall, subject to the direction of the attorney general, have the same power and authority as the attorney general.

.    .    . .    .    .

(Emphasis added.)

■ The three quoted statutes must be construed together in order to ascertain the true meaning of the statutes and the intent of the Legislature. Section 8–5–2(B) grants the attorney general concurrent power with the district attorneys to prosecute criminal offenses. This statute is tempered by the provisions of Section 8–5–3, which provide that the attorney general may act if the district attorney fails or refuses to act. We note in particular that this statute reads: "failure or refusal." We define the word "failure" to carry a broader meaning than "refusal." Section 8–5–5 grants to the attorney general the authority

to appoint assistant attorneys general "as the business of the department shall require."

We interpret the statutes quoted above to mean that if a district attorney does not perform properly and adequately his legal duties of investigation and prosecution of civil and criminal cases, and particularly as in this case, where the district attorney's office and the attorney general's office recused their respective offices from participation because of a possible conflict, then the attorney general not only has the power, but it is his duty, where conditions warrant, to perform these functions and to appoint assistant attorneys general as special prosecutors for the appropriate purposes.

The language of this Court in *State v. Reese,* 78 N.M. 241, 430 P.2d 399 (1967) is particularly applicable here in reviewing the parallel statutory provisions defining the powers of the district attorney and the attorney general.

The language, in our view, permits the attorney general to bring an action on behalf of the state if no other provision has been made for it to be brought, or to step into litigation brought by another *where the interests of the state are not being adequately represented or protected.*

*Id.* at 245, 430 P.2d at 403 (emphasis added).

■ *Point 2.* We hold that the indictment was not sufficient upon its face to charge the crime of perjury.

The following facts are relevant to Point 2: Defendant was convicted of Count IV of the indictment. Count IV charges defendant with:

PERJURY, in that on or about the 4th day of December, 1976, the Defendant, EMILIO NARANJO, did make a false statement under oath or affirmation, material to the issue or matter involved in the course of a judicial proceeding to wit: Before a Judge and Jury in the case of State of New Mexico vs. Moises Morales, the Defendant did testify that he saw Ruben Vigil take a paper bag from Mois-

es Morales' truck, in that he gave specific answers to the following questions:

Q. Did you see him find anything inside the truck?

A. Yes as I was holding the flashlight he was putting his hand under the driver's side of the truck and he took out what appeared to me a grocery bag.

Q. You testified Sheriff before I left the court room that you saw him find the bag?

A. He pulled it from under the seat of the driver's side of the truck.

Q. I am going to hand you what has been marked State's Exhibit No. 1 and I ask you if you recognize the bag?

A. Yes sir I do.

Q. Would you please tell the Court and Jury where you recognize the bag from?

A. That is the bag that came in the group that Deputy Vigil had from under the truck on the driver's side which is Morales' pick-up.

Q. And then what did you do after that bag was pulled out?

A. He opened the bag and he put in the flashlight and the bag looked like it was marijuana appeared to be marijuana.

said defendant knowing such statement to be untrue, contrary to Section 40A–25–1, NMSA, 1953 Compilation, as amended. [Now § 30–25–1, NMSA 1978.]

Section 30–25–1, N.M.S.A.1978, reads:

Perjury consists of making a false statement under oath or affirmation, material to the issue or matter involved in the course of any judicial, administrative, legislative or other official proceeding, *knowing such statement to be untrue.* (Emphasis added.)

Whoever commits perjury is guilty of a fourth degree felony.

Defendant filed a motion to dismiss the indictment for failure to contain the essential elements of perjury. The motion was denied by the trial court.

A careful analysis of the indictment discloses that there are over twenty separate facts quoted from defendant's testimony in the document. The only facts specifically identified as being false are that defendant saw Ruben Vigil "take a paper bag from Moises Morales' truck." There is no way of knowing from the face of the indictment whether any one or all of the other statements of fact are claimed to be false by the State. The last sentence does not aid in pinpointing the charge since it uses the singular "statement" in charging defendant with speaking the various words "knowing such *statement* to be untrue."

Although this indictment must stand or fall by what is contained therein without reference to the evidence that was later adduced at trial, the evils that could have been avoided by strict construction of this indictment by the trial court were demonstrated at trial. At various times the State appeared to be trying to prove that there was no such bag; that a bag with that much marijuana in it would not fit under the seat; that defendant was not in position to see the bag taken from the car; that defendant had not held the flashlight; that he had not looked in the bag; that the deputy had gotten a bag from the trunk of the sheriff's car and took it to Morales' pickup, the implication being that the deputy placed the drugs in the pickup; and that the marijuana had been "planted" in Morales' pickup by Campos or Trujillo, both of whom had used Morales' pickup that day.

The confusion generated by the poorly drawn indictment is fully evident. Defendant correctly argues that it did not furnish him with the specific details as to the charges against which he was compelled to defend. The instrument failed to give him proper notice of the charges.

The majority of the Court of Appeals found that the statement by defendant that he saw the deputy take the bag from Morales' pickup "was true, not false." The concurring opinion correctly stated that it is not within a reviewing court's prerogative to decide questions of fact on appeal. That court also determined that it was not material as to whether Vigil took the bag from Morales' truck. We disagree on this point

because that evidence is crucial on the issue of *possession* by Morales.

■ N.M.R.Crim.P. 5(c) and 8(a), N.M.S. A.1978, require that an indictment or information give a defendant notice of the crime charged. Under this rule, every accused is entitled to be informed in sufficient detail of the crime charged to enable him to prepare his defense. *State v. Foster,* 87 N.M. 155, 530 P.2d 949 (Ct.App.1974). A further purpose of this rule is to make a defendant's conviction or acquittal res judicata against a subsequent prosecution for the same offense. *State v. Stephens,* 93 N.M. 458, 601 P.2d 428 (1979); *State v. Lott,* 73 N.M. 280, 387 P.2d 855 (1963).

■ The testimony quoted in the indictment, by way of questions and answers, even though considered in conjunction with the first paragraph of the indictment, does not meet the requirements for charging the crime of perjury as stated in *Territory v. Lockhart,* 8 N.M. 523, 45 P. 1106 (1896). The holding in that case, which is still the law in New Mexico, sets forth the rule that before a charge of perjury can be sustained, the following essentials are required: (1) the allegations must be direct and specific, not in terms of uncertain meaning or by way of implication; (2) the indictment must particularize where the testimony was false, a general allegation of falsity being insufficient; and (3) if the offense encompasses many allegedly perjurious statements "of which some might be true, and used only as the vehicle of falsity," the defendant must be told in the indictment "wherein, and to what extent, the statements alleged to have been made by him were false." *Id.* at 526–28, 45 P. at 1107.

■ *Point 3.* We agree in all material respects with the decision of the Court of Appeals that it was error for the trial court to admit into evidence the proof that Morales had been acquitted of the charge of possessing the marijuana. Finding that evidence to be relevant was an abuse of discretion by that court, since it had absolutely no bearing on the guilt or innocence of defendant. There is no question but that

the evidence was highly prejudicial to defendant, which prejudice far out-weighed any probative value it had. *See* N.M.R. Evid. 403, N.M.S.A.1978; *State v. Hogervorst,* 90 N.M. 590, 566 P.2d 828 (Ct.App. 1977), *cert. denied,* 90 N.M. 636, 567 P.2d 485 (1977).

■ *Point 4.* The Court of Appeals held that there was not sufficient evidence of defendant's guilt to sustain the verdict of the jury. We agree. The record reflects no evidence of guilt.

If we assume that he was legally charged, we first must consider that defendant's guilt of lying under oath has to be proven beyond a reasonable doubt. N.M.U.J.I. Crim. 40.60, N.M.S.A.1978. The jury was instructed that "[a] reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act in the graver and more important affairs of life." *Id.*

Ignoring the faulty indictment prepared by the prosecutor, we now assume that the State's case depended upon proving beyond a reasonable doubt that defendant lied when he said (1) that the grocery bag was taken from Morales' pickup and (2) that Naranjo saw and smelled what appeared to be marijuana in the bag.

As to the bag, we have Morales' testimony that there was, what he recalled to be, a Safeway grocery bag containing some dirty clothes under the seat; and at one juncture Morales testified that defendant helped the deputies take various things out of the pickup. At another point, Morales' testimony seemed to merely question whether defendant was near the pickup at the crucial time, rather than flatly denying that defendant saw the bag removed from the pickup. Defendant's testimony on this point was unequivocal. There was no other evidence on the issue. The bag and its contents were not introduced in evidence at trial, although they had been in evidence and identified by defendant at the Morales trial.

This testimony falls far short of proof beyond a reasonable doubt that defendant

lied as to the removal of the specific bag with marijuana in it from the truck.

In considering whether defendant lied about seeing what appeared to be marijuana in the bag, we find no denial by Morales that the bag contained marijuana. He never testified that there was no marijuana in the truck. He was never asked the question. Defendant's statement is uncontradicted by any direct evidence. There is considerable evidence from defendant and others regarding the testing of the contents of the bag, which showed it to be marijuana. The most charitable assessment of the State's case is that the sole proof upon which the falsity of defendant's statement is based was the assertion by Morales that *he* did not put marijuana in the pickup.

The State and Morales repeatedly raised the suspicion that someone had "planted" the drugs in Morales' pickup. It must be made plain that defendant is not being tried for placing marijuana in the truck or for conspiracy to do so. None of the testimony links him with speculation regarding the depositing of the narcotics in the vehicle. In any event, proof of a "plant" would tend to exonerate defendant on the charges here.

Morales' suspicions of a plant were aroused when the deputies opened the trunk of the sheriff's car and Deputy Vigil went back to the pickup with a dirty white sack. Morales talked to a person at the jail about his thoughts that the deputies were planting something in his truck. He called his lawyer the next morning to explain to him that he thought something had been planted in his pickup. He talked with someone else and also speculated in his testimony that either Campos or Trujillo, both of whom used the truck that day, could have put the marijuana in the vehicle. One other witness, Pena, was in the truck looking for music tapes, and could have left the drugs.

Under these circumstances, where Morales and the prosecution appeared to be so thoroughly convinced of the probability that there was marijuana in the pickup, how could a juror find, "based upon reason and common sense," that there is no reasonable doubt as to defendant's guilt?

Not one witness stated unequivocally that there was no marijuana in the bag in question. Even if we consider the statement of Morales that he did not put marijuana in the truck, there is still no other evidence corroborating his testimony. Our rule is that evidence of one witness alone, not corroborated by any other evidence, is insufficient to warrant a conviction of perjury. *State v. Borunda*, 83 N.M. 563, 494 P.2d 976 (Ct.App.1972), *cert. denied*, 83 N.M. 562, 494 P.2d 975 (1972).

We hold that the evidence in this record clearly fails the test of demonstrating the guilt of defendant beyond a reasonable doubt. Therefore we reverse the Court of Appeals as to Point 1, but affirm as to the other points as indicated. The conviction is set aside and the defendant is discharged.

IT IS SO ORDERED.