1999-NMCA-053

979 P.2d 234

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Salvador BENAVIDEZ, Defendant– Appellant.**

**No. 18,699.**

Court of Appeals of New Mexico.

Dec. 23, 1998.

Certiorari Granted, No. 25,548, April 27, 1999.

Tom Udall, Attorney General, Steven S Suttle, Assistant Attorney General, Albuquerque, for Appellee.

Paul J. Kennedy, Albuquerque, for Appellant.

## OPINION

APODACA, Judge.

{1} Defendant appeals his convictions under three counts of perjury and one count of conspiracy to commit perjury, contrary to NMSA 1978, § 30–25–1 (1963), and NMSA 1978, § 30–28–2 (1979). He raises several issues on appeal: (1) the trial court erred by removing the element of materiality in a perjury prosecution from the jury's consideration; (2) the indictment should have been dismissed because the prosecutor failed to instruct the grand jury on the element of materiality on the charge of perjury; (3) Defendant was denied his constitutional right to a speedy trial; (4) the prosecutor wrongfully acquired and used information from another grand jury proceeding relating to Defendant in violation of the grand jury secrecy statute, NMSA 1978, § 31–6–6 (1979); (5) perjury counts one and three were not supported by sufficient evidence; (6) the conspiracy count of the indictment should be dismissed for failure to particularly allege the perjury Defendant allegedly conspired to commit; and (7) the trial court erred in admitting the statement of the deceased witness, James Crain (Mr. Crain), as a statement against penal interest under Rule 11–804(B)(3) NMRA 1998.

{2} We hold that the trial court committed reversible error by failing to instruct the jury on the essential element of materiality in light of the United States Supreme Court's decision in *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). We therefore reverse Defendant's convictions on the perjury counts and remand for a new trial on counts one and three. We also remand with instructions to vacate count two because it is duplicative of count three. Additionally, we hold that Defendant waived his claim that the allegations in the conspiracy count of the indictment were fatally deficient and therefore affirm the conviction for conspiracy to commit perjury. Because Defendant would be afforded greater relief on appeal if this Court determined the evidence was insufficient to support Defendant's conviction on count three of perjury, *see State v. Santillanes*, 109 N.M. 781, 782, 790 P.2d 1062, 1063 (Ct.App.1990), we address whether there was sufficient evidence to support the conviction under count three and conclude that there was. We also conclude that allegations in count one of the indictment were sufficient to charge Defendant with the offense of perjury as an accomplice. Finally, we hold that the trial court erred in admitting Mr. Crain's statement to the Chief Investigator of the District Attorney's office as a statement against interest. We reject Defendant's remaining contentions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{3} Defendant is the former Sheriff of Cibola County. On March 2, 1996, he was arrested on charges of perjury, conspiracy to commit perjury, criminal solicitation to commit perjury, criminal solicitation to commit tampering with evidence, and conspiracy to commit tampering with evidence. The charges arose from the allegedly false testimony of Defendant and his undersheriff, Mr. Crain, at a hearing, on February 2, 1996, to show cause why Defendant should not be held in contempt for violating a domestic violence-restraining order. The restraining order prohibited Defendant from contacting his ex-wife, Ms. Benavidez, or coming within 100 yards of her home. Defendant was alleged to have violated the restraining order

by appearing at Ms. Benavidez' residence on the evening of January 30, 1996.

{4} At the show-cause hearing before Judge Rich, Defendant presented the testimony of Mr. Crain, who stated under oath that, on the evening in question, he was with Defendant at Defendant's residence when Defendant received a telephone call from his dispatcher asking that he respond to an emergency call from his ex-wife's house. Mr. Crain testified that he accompanied Defendant to Ms. Benavidez' house to investigate the call. He also testified that, in responding to the call, Defendant had no intent whatsoever to violate the conditions of the restraining order.

{5} Count one of the indictment, which charged Defendant with perjury as an accessory, set forth Mr. Crain's allegedly false testimony at the hearing as follows:

I was present at Mr. Benavidez's home that evening. I was sitting on the floor watching TV and Benavidez was talking to one of the other deputies on the phone, when he had a second call came [sic] in. And I, ah, he told the other deputy, other employee, he says[,] "Will you, I have another call, can you hold on the phone just a minute?["] So he turned his phone to the position where it would receive the other call and apparently it stated that there was an emergency at his wife's home and he was needed. So he went back to the other side. He told the other employee, he says, "I've got to go." So immediately he jumped up, he says, "come go with me[,]" and we went out and got in his car and drove over to the residence and parked there just below, in front of the house. He got out and went and went up to the door. We saw no disturbance. Ah[,] apparently someone came to the door and said something to him. I didn't get out the vehicle. He came back and got in the vehicle and began to leave. So while we were going around the corner we heard on the scanner about the 911 call. We went around the corner and came back and parked and he walked up to the officer from Grants P.D., Officer Brian Lackey[,] and they discussed something for a minute and Brian said, "no, no need for you to be here, better

go[.]" He came back, he got back in the vehicle and left. There was no intent to violate any order . . . [.]

{6} Defendant testified immediately following Mr. Crain's testimony. He essentially vouched for the truthfulness of Mr. Crain's testimony, stating under oath: "Your Honor, ah, what the officer, or what Mr. Crain stated is correct." When Judge Rich asked Defendant whether he was at his ex-wife's residence on the night in question, he testified:

I knocked on the door and she looked out the window by the door there and ah, she called our nephew and our nephew came out and talked to me for a second and ah, he asked me, you're not supposed to be here. I said, I understand that but I did receive a call and he said well, but I'll leave so I left right away. I didn't, I didn't try to say anything in, in remarks to or, to violate the restraining order, your honor.

The above statements by Defendant were the basis of count three of the indictment charging Defendant with perjury as a principal.

{7} Count two of the indictment also charged Defendant with perjury as a principal, and was again based on Defendant's statement that "what Mr. Crain stated is correct," and his additional statement, "Hum, Mr. Crain was still present when I did, I did go to Mr. Sanchez' house and Mr. Crain was still present with me."

{8} At the show-cause hearing, Ms. Benavidez testified that, after Defendant left her residence, he immediately drove to her boyfriend's (Mr. Sanchez) house, which was about a five-minute drive from her house. There, Officer Lackey of the Grants Police Department saw Defendant's patrol vehicle parked in front of Mr. Sanchez' residence and spoke briefly with Defendant. Officer Lackey did not see Mr. Crain or anyone else with Defendant, although he did not look in the vehicle.

{9} In fact, Mr. Crain was not with Defendant on the evening of January 30, 1996. During the investigation of the suspected perjury, Mr. Crain informed Investigator Malone, the Chief Investigator for the District Attorney's Office, that on the night of January 30, 1996, he was actually conducting

a prisoner transport at the Quay County Juvenile Detention Center in Tucumcari. Mr. Crain also informed Investigator Malone that Defendant had asked him to provide an alibi for him for that night. According to Mr. Crain, Defendant asked him to testify at the show-cause hearing to the effect that, on the night in question, he was with Defendant at his residence when Defendant received the call from his dispatcher about an emergency situation at his ex-wife's residence. Mr. Crain also stated that Defendant had asked him to testify that he had accompanied Defendant to Ms. Benavidez' house but had remained in the patrol vehicle while Defendant went to the front of the house to investigate. According to Mr. Crain, his testimony at the hearing was intended to bolster Defendant's position that he had no intention of violating the conditions of the restraining order. Mr. Crain died in July 1996, several months before Defendant's trial.

{10} At the perjury trial, the State presented the testimony of Ms. Benavidez, who testified about her divorce from Defendant and the events leading up to the issuance of the restraining order. She also recounted Defendant's visit to her home on the night in question. Ms. Benavidez' nephew, Mr. Torres, also testified. According to his testimony, he was present when Defendant appeared at Ms. Benavidez' house, apparently alone. Other witnesses called by the State included Mr. Sanchez and Officer Lackey, both of whom testified that no one was with Defendant when they encountered him following his visit to Ms. Benavidez' home. The State also presented the testimony of Mr. Crain's widow and a detention officer with the Quay County Juvenile Detention Center, who testified that, on the night in question, Mr. Crain was conducting a prisoner transport in Tucumcari.

{11} Investigator Malone next testified that he interviewed Mr. Crain during the perjury investigation, read him his rights and did not offer him anything in return for his statement. Upon Investigator Malone's authentication of Mr. Crain's statement during the interview, a redacted version of the statement was admitted into evidence, over defense counsel's objection on hearsay grounds.

The prosecutor then read the statement to the jury.

{12} Finally, Judge Rich testified regarding Defendant's and Mr. Crain's testimonies at the contempt hearing on February 2, 1996. He specifically stated that Mr. Crain's false testimony influenced his decision on the issue of whether Defendant had violated the restraining order. In particular, he testified that, had Defendant truly received a call about an emergency at Ms. Benavidez' residence, it would have affected his decision about whether Defendant had violated the conditions of the restraining order.

{13} At the conclusion of the evidence, the jury returned guilty verdicts against Defendant on all three counts of perjury, one count of criminal solicitation to commit perjury and one count of conspiracy to commit perjury. The jury acquitted Defendant of the counts of criminal solicitation to commit tampering with evidence and conspiracy to commit tampering with evidence. At the sentencing hearing, the trial court entered a finding of not guilty on the count of criminal solicitation to commit perjury on the ground that it merged with the conspiracy count. This appeal followed.

## II. DISCUSSION

### A. Failure to Instruct Jury on Element of Materiality

{14} In *Gaudin*, 515 U.S. at 509–23, 115 S.Ct. 2310, the United States Supreme Court held that the Fifth and Sixth Amendment guarantees of due process and jury trial required trial courts to submit the element of materiality in perjury prosecutions to the jury. *Gaudin* thus rejected the rule followed by many jurisdictions that the element of materiality is a question of law reserved for the trial court. *See* John E. Theuman, Annotation, *Materiality of Testimony Forming Basis of Perjury Charge as Question for Court or Jury in State Trial*, 37 A.L.R.4th 948, §§ 2(a), 3 (1985 & Supp.1998). Justice Scalia expressed the rationale of the Court in a simple syllogism: (1) an accused is constitutionally guaranteed the right to have a jury determine, beyond a reasonable doubt, guilt of each essential element of the crime

charged; (2) materiality is an essential element of the crime of making a false statement to a governmental agency under 18 U.S.C. § 1001 (1998); (3) therefore, the accused is entitled to have the jury determine materiality. *See Gaudin,* 515 U.S. at 511, 115 S.Ct. 2310. In other words, materiality is the sort of mixed question of law and fact typically resolved by the jury. *See id.* at 512, 115 S.Ct. 2310.

{15} Before *Gaudin,* New Mexico had joined the overwhelming majority of jurisdictions in holding that the element of materiality in a perjury prosecution is a question of law to be decided by the trial court. *See State v. Albin,* 104 N.M. 315, 318, 720 P.2d 1256, 1259 (Ct.App.1986); *State v. Gallegos,* 98 N.M. 31, 32, 644 P.2d 545, 546 (Ct.App. 1982); *see also* UJI 14–2501 NMRA 1997, use note 2 (stating that "issue of materiality is a matter of law to be decided by the judge"). The United States Supreme Court's decision in *Gaudin,* however, now compels us to reconsider that rule.

■ {16} Based on *Gaudin's* rejection of cases like *Gallegos* and *Albin,* which routinely concluded that materiality was a question of law for the trial court, we hold that, under the Fifth and Sixth Amendments of the federal constitution, a defendant is entitled to have the question of materiality submitted to the jury. Clearly, under New Mexico's perjury statute and our case law interpreting that statute, materiality is an essential element of the crime of perjury. *See* Section 30–25–1 ("Perjury consists of making a false statement under oath or affirmation, *material to the issue or matter* involved in the course of any judicial, administrative, legislative or other official proceeding, knowing such statement to be untrue.") (emphasis added); *State v. Naranjo,* 94 N.M. 407, 411, 611 P.2d 1101, 1105 (1980) (analyzing whether indictment is sufficient to charge perjury). We therefore overrule *Gallegos* and *Albin* to the extent that those cases hold that materiality is an element for the trial court to decide as a matter of law. We instead adopt the rule of *Gaudin* that the materiality of a false statement is a mixed question of law and fact for the jury.

{17} This case was tried almost two years after the *Gaudin* decision. Nevertheless, the trial court instructed the jury in accordance with our prior decisions in *Gallegos* and *Albin* by submitting the uniform jury instruction for the crime of perjury that was in effect at the time of trial. *See* UJI 14–2501 NMRA 1997. Unfortunately, that instruction still reflected our pre-*Gaudin* precedent and consequently omitted the element of materiality. *See id.* Our Supreme Court has since modified UJI 14–2501 to include materiality as a question for the jury. *See* UJI 14–2501 NMRA 1998 (requiring jury to find beyond a reasonable doubt that "[t]he false statement was material to the issue or matter involved in the [judicial] [administrative] [legislative] [or] [official] proceeding, which means the statement had a natural tendency to influence the decision of the _____."). The Committee Commentary to UJI 14–2501 NMRA 1998 explains that the instruction was amended to comport with the Sixth Amendment right to a jury trial and cites to *Gaudin.*

■ {18} The State argues that, at the time of trial, UJI 14–2501 had not yet been revised to include materiality, and therefore, error should not be predicated on the trial court's use of an applicable and controlling uniform jury instruction. *See* UJI 14–101 to –9004 general use note NMRA 1998 (providing that when a uniform jury instruction is provided for elements of crime, trial court is required to use instruction without substantive modification or substitution). The trial court's faithful following of the uniform jury instruction in this case, however, does not preclude this Court from reviewing the instruction for error where its validity has not been directly addressed by the Supreme Court in light of the holding in *Gaudin. See State v. Acosta,* 1997–NMCA–035, ¶ 14, 123 N.M. 273, 939 P.2d 1081 (noting that adoption of a uniform jury instruction " 'does not preclude this Court from insuring that the rights of individuals are protected' " or from altering or abolishing a uniform jury instruction that has not been specifically considered by Supreme Court) (quoting *State v. Parish,* 118 N.M. 39, 47, 878 P.2d 988, 996 (1994)).

{19} In this case, by using an instruction that did not include the necessary element of materiality, the trial court instructed the jury on law that had been seriously cast into doubt by *Gaudin. See Parish*, 118 N.M. at 41, 878 P.2d at 991 (reviewing court must read jury instructions together to determine whether they fairly and accurately present the issues and the applicable law). Defendant was tried post-*Gaudin*, and therefore, was entitled to have an instruction consonant with the law as modified by that decision. *See State v. Lindemuth*, 56 N.M. 257, 266, 243 P.2d 325, 331 (1952), *overruled on other grounds by State v. Alberico*, 116 N.M. 156, 165–67, 861 P.2d 192, 201–03 (1993) (noting that decisions of United States Supreme Court are binding on New Mexico state courts where rights under federal constitution are invoked); *cf. Walker v.. Maruffi*, 105 N.M. 763, 766, 737 P.2d 544, 547 (Ct.App. 1987) (observing that state courts are bound by decisions of the United States Supreme Court affecting federal law under supremacy clause, U .S. Const. Art. VI, cl. 2). We therefore conclude that the trial court's refusal to instruct the jury on the essential element of materiality amounted to constitutional error in light of *Gaudin*.

{20} The State nonetheless contends that, even if the trial court erred in removing the element of materiality from the jury's determination, the error was harmless because the State presented uncontroverted evidence at trial that the false testimony in question was material to Judge Rich's determination that Defendant had violated the restraining order, and, therefore, the element of materiality was never in dispute. Defendant, on the other hand, argues that the failure to instruct the jury on the materiality element was structural error requiring reversal of his convictions under *Gaudin* and *United States v. Wiles*, 102 F.3d 1043, 1058 (10th Cir.1996) (holding that failure to instruct juries on the element of materiality was structural and required vacating the defendant's convictions), *cert. granted and judgment vacated sub nom. United States v. Schleibaum*, —— U.S. ——, 118 S.Ct. 361, 139 L.Ed.2d 282 (1997). Defendant additionally argues that he raised and disputed materiality at every stage of the litigation.

{21} We note that *Wiles* has been superseded by *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). *See United States v. Gassaway*, 966 F.Supp. 1054, 1057 (W.D.Okla.1997) (noting that *Johnson* supersedes *Wiles* and "eviscerates" argument that *Gaudin*-type error is structural and reversible per se). In *Johnson*, the United States Supreme Court considered the applicable standard of review for a *Gaudin*-type error where no objection was made at trial to the court's removal of the question of materiality from the jury. *See Johnson*, 117 S.Ct. at 1547. The court in *Johnson* refused to find that the failure to submit materiality to the jury was structural error requiring automatic reversal. *See id.* at 1549–50. Instead, the United States Supreme Court engaged in plain error review under Federal Rule of Criminal Procedure 52(b), which allows a reviewing court to notice plain errors affecting substantial rights even though there was no objection at trial. *See Johnson*, 117 S.Ct. at 1547–50. Applying the four-part, plain error analysis under *United States v. Olano*, 507 U.S. 725, 733–36, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court held that, although the failure to instruct was plain error, it did not seriously affect the fairness, integrity or public reputation of judicial proceedings, and therefore the error failed to meet the fourth prong of the *Olano* test. *See Johnson*, 117 S.Ct. at 1550.

{22} Because *Johnson* squarely rejects the claim that a *Gaudin*-type error is structural and requires automatic reversal, we find Defendant's first argument based on structural or fundamental error to be without merit. We note, however, that the plain error analysis conducted in *Johnson* also does not apply to this case because, unlike the defendant in *Johnson*, the defense in this case properly objected to the trial court's failure to submit materiality to the jury. *See United States v. Qualls*, 140 F.3d 824, 829 n. 11 (9th Cir.1998) (noting that plain error analysis under *Johnson* is inapplicable where defendant objected to trial court's jury instruction error). The question then becomes whether harmless error review applies in this case. We conclude that it does.

{23} New Mexico appellate courts have acknowledged that most constitutional errors are amenable to harmless error scrutiny. *See, e.g., State v. Martinez*, 1996–NMCA–109, ¶ 19, 122 N.M. 476, 927 P.2d 31 (citing *Chapman v. California*, 386 U.S. 18, 22–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)); *see also Rose v. Clark*, 478 U.S. 570, 576–79, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (noting that there is a "strong presumption" that a constitutional violation will be subject to harmless error analysis). Although the Supreme Court in *Gaudin* never directly reached the question of the applicable standard of review, Chief Justice Rehnquist, in his concurring opinion, joined by Justices O'Connor and Breyer, suggested that harmless error review should apply to *Gaudin*-type errors. *See Gaudin*, 515 U.S. at 526, 115 S.Ct. 2310 (Rehnquist, C.J., concurring) (noting that "the Court has subjected jury instructions plagued by constitutional error to harmless-error analysis"); *but see Sullivan v. Louisiana*, 508 U.S. 275, 281–82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (holding that erroneous reasonable doubt instruction was structural error precluding harmless error analysis).

{24} Later, in *Johnson*, the Supreme Court suggested once again that a *Gaudin*-type error was amenable to harmless error review. *See Johnson*, 117 S.Ct. at 1550 ("The failure to submit materiality to the jury … can just as easily be analogized to improperly instructing the jury on an element of the offense, an error which is subject to harmless-error analysis, as it can be to failing to give a proper reasonable-doubt instruction altogether.") (citations omitted).

{25} We thus conclude that harmless error analysis applies when an objection to a *Gaudin* error is properly asserted at trial. In reaching this conclusion, we join other courts that have applied harmless error review to a preserved error of failure to instruct the jury on the element of materiality. *See, e.g., United States v.. Johnson*, 139 F.3d 1359, 1363 (11th Cir.1998); *United States v. Raether*, 82 F.3d 192, 194 (8th Cir. 1996); *State v. Pechan*, 554 N.W.2d 663, 665 (S.D.1996); *but United States v. DeFries*, 129 F.3d 1293, 1312 n. 13 (D.C.Cir.1997) (noting that *Johnson* did not decide whether *Gaudin* error was per se prejudicial error affecting substantial rights or was subject to harmless error analysis).

{26} Having so concluded, we now examine the record in this appeal to consider whether the trial court's failure to submit materiality to the jury was harmless. The State argues that Defendant presented no evidence during cross-examination to controvert Judge Rich's testimony that the perjury in question was material to his decision of whether Defendant had violated the domestic violence-restraining order. A statement is material if it has a natural tendency to influence or the capability to influence the decision of the decision-making body to which it is addressed. *See Gaudin*, 515 U.S. at 509, 115 S.Ct. 2310. Under the harmless error standard of review, the government carries the burden of showing an absence of prejudice to the defendant's substantial rights. *See Johnson*, 139 F.3d at 1363. Here, the State had the burden of showing that the guilty verdicts rendered against Defendant were "surely unattributable" to the incorrect jury instructions regarding perjury. *Sullivan*, 508 U.S. at 279, 113 S.Ct. 2078.

{27} Even though Defendant apparently did not present any evidence at trial to refute Judge Rich's testimony on materiality, we cannot conclude beyond a reasonable doubt that Defendant's convictions of perjury were certainly unattributable to the faulty jury instructions. Because the trial court withdrew the element of materiality from the jury's consideration and determined the issue as a matter of law, there is nothing in the record showing that the jury made any independent determination on materiality. Nor does it appear from the record that the element of materiality can be inferred from any of the jury's actual findings. *See Raether*, 82 F.3d at 194–95 (holding no harmless error where the record does not show that jury made independent determination about materiality or that jury made findings so closely related to materiality that they are functional equivalent of materiality finding); *Pechan*, 554 N.W.2d at 665 (same).

{28} Additionally, in this case, Defendant argued both at trial and now on

appeal, that the trial court committed reversible error in failing to submit the issue of materiality to the jury. On appeal, we will not engage in speculation about what the jury would have decided if proper instructions had been submitted. *See Sullivan,* 508 U.S. at 280, 113 S.Ct. 2078. To do so would jeopardize Defendant's right to have his conviction rest on an actual finding of guilt, beyond a reasonable doubt, as to each essential element of the crime charged, as our case law requires. *See id.* at 279, 113 S.Ct. 2078 ("Harmless-error review looks ... to the basis on which 'the jury *actually rested* its verdict.' ") (quoting *Yates v. Evatt,* 500 U.S. 391, 404, 111 S.Ct. 1884, 114 L.Ed.2d 432) (1991), *overruled on other grounds by Estelle v. McGuire,* 502 U.S. 62, 73 n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

{29} We thus conclude that the failure to instruct the jury on materiality was not harmless.

## B. Dismissal of Indictment Based on *Gaudin* Error

{30} Defendant makes the related argument that the prosecutor's failure to instruct the grand jury on the element of materiality prejudiced Defendant and, thus, warrants dismissal of the perjury counts in the grand jury indictment. Defendant, however, failed to introduce any evidence of the grand jury proceedings into the record on this issue. At the hearing on the motion to dismiss Defendant argued facts that were never made a part of the record. *See State v. Jacobs,* 102 N.M. 801, 805, 701 P.2d 400, 404 (Ct.App.1985) (argument of counsel is not evidence and cannot establish facts). Because there is no factual support for Defendant's claim, we have no basis on which we can review the grand jury instructions for error. *See State v. Martin,* 101 N.M. 595, 603, 686 P.2d 937, 945 (1984) (matters not of record cannot be reviewed on appeal).

## C. Speedy Trial Claim

{31} Defendant claims he was denied his constitutional right to a speedy trial. We determine whether a defendant's right to a speedy trial has been violated by balancing the four factors set forth in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):(1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) prejudice to the defendant. *See Zurla v. State,* 109 N.M. 640, 642, 789 P.2d 588, 590 (1990) (applying four-part test in *Barker* ). In considering each of the four factors, we independently examine the record to determine whether Defendant's right to a speedy trial was violated, but give due deference to the trial court's findings of fact. *See State v. Gallegos,* 109 N.M. 55, 63, 781 P.2d 783, 791 (Ct.App.1989).

### 1. Length of Delay

{32} Defendant was arrested on March 1, 1996, and remained in custody until the date of his trial on February 17, 1997. Thus, the length of delay in this case amounted to 11½ months. Defendant argues that this delay is presumptively prejudicial, given the relatively simple nature of the charges. *See Salandre v. State,* 111 N.M. 422, 428, 806 P.2d 562, 568 (1991) (noting that delay of nine months marks minimum length of time that may be considered presumptively prejudicial in case involving simple charges and readily available evidence). Here, other than vaguely stating that the delay in this case was attributable not to the court or to the parties, but to "the nature of this particular case", it does not appear from the record that the trial court ever sufficiently determined the question of the complexity of the case or whether the 11½–month delay was presumptively prejudicial. *See Gallegos,* 109 N.M. at 62, 781 P.2d at 790 (urging trial courts to make specific findings of fact in determining speedy trial violations due to fact-sensitive nature of claims). In deciding whether a delay is presumptively prejudicial, we consider the length of the delay, the complexity of the charges, and the nature of the evidence. *See Salandre,* 111 N.M. at 428, 806 P.2d at 568.

{33} Because of the nature and multiplicity of the perjury related charges in this case, as well as the politically sensitive and highly publicized nature of the proceedings due to Defendant's status, we believe that this case could very well be a case of inter-

mediate complexity. However, on appeal, the parties do not appear to seriously dispute that the facts of this case were relatively simple. For these reasons, we apply the nine-month benchmark set out in *Salandre,* and conclude that the 11½–month delay was presumptively prejudicial.

### 2. Reasons for Delay

■ {34} Once Defendant has established a presumptively prejudicial delay, the burden shifts to the State to prove that the remaining *Barker* factors weigh in its favor. *See Zurla,* 109 N.M. at 646, 789 P.2d at 594. This step of the balancing test requires us to attribute the reasons for the delay to each side and to determine the weight to be given to each reason. *See State v. Tortolito,* 1997–NMCA–128, ¶ 8, 124 N.M. 368, 950 P.2d 811.

■ {35} The State argues that a 3½–month delay from March 1 to June 13, 1996, was caused by the reassignment of the case to seven different district court judges. The record indicates that two judges were excused by the State, one was disqualified by Defendant, and four recused themselves. We hold that the length of delay caused by the recusals, a period that appears to amount to less than one month, should not be allocated to either party but should be excluded from the speedy trial period. *See Clements v. State,* 312 Ark. 528, 851 S.W.2d 422, 424 (1993) (holding that period between recusal from case and appointment of new judge should be excluded from speedy-trial analysis); *Hobson v. State,* 625 So.2d 1168, 1169–70 (Ala.Crim.App.1993) (holding that length of delay due in part to recusals of judges was not excessive); *cf. State v. White,* 118 N.M. 225, 226, 880 P.2d 322, 323 (Ct.App.1994) (noting that delay caused by judge's surgery and recovery time does not weigh against either side). Additionally, we conclude that the delay attributable to the two excusals requested by the State and the one excusal requested by Defendant should weigh evenly against the parties. Consequently, neither side should be faulted for the delays occasioned by the reassignment of the case to the various judges.

■ {36} The State also argues that Defendant should be held accountable for the delay caused by his waiver of preliminary hearing and presentation to the grand jury and subsequent withdrawal of that waiver. Both parties stipulated below that Defendant signed the waiver on March 7, 1996, in anticipation of entering into a plea agreement with the State. Although the amount of time actually consumed by plea negotiations is not clear from the record, it appears that at some point between March 7 and sometime in July 1996, when Defendant filed his motion to dismiss on the ground that he had not been afforded a preliminary hearing or grand jury hearing, plea negotiations in the case had broken down, and Defendant had revoked his previous waiver of preliminary hearing and presentation to the grand jury.

{37} In *State v. Lujan,* 112 N.M. 346, 349–50, 815 P.2d 642, 645–46 (Ct.App.1991), we noted that "any time period during which the parties explicitly agreed to delay further proceedings to explore plea negotiations . . . constitutes a period of time for which a valid reason for delay existed" and should not be weighed against the state. Here, we believe that Defendant's signed waiver of the preliminary hearing and presentation to the grand jury, coupled with the parties' stipulation that the waiver was signed in anticipation of entering into plea negotiations, presented circumstances indicating that the parties explicitly agreed to suspend the time in which to proceed to trial. We thus conclude that the period of delay caused by Defendant's waiver of preliminary hearing and presentation to the grand jury and withdrawal of that waiver should be charged to Defendant.

■ {38} Our review of the record also indicates that a significant reason for the delay in bringing this case to trial was the large volume of pretrial motions filed by Defendant, including numerous motions to dismiss, motions to compel discovery, motions to suppress, and motions for change of venue. Consequently, a substantial amount of time was consumed by the trial court's scheduling and holding of motion hearings. As the trial court indicated at the hearing on the speedy-trial motion, the case was promptly set for hearings once the presiding judge had been appointed. Additional delay

was also caused by the need to remand the case for a probable cause determination upon Defendant's motion and withdrawal of his initial waiver of preliminary hearing and presentation to the grand jury.

{39} We hold that the period of delay attributable to Defendant's pretrial motions and the remand for grand jury hearing should not be charged to either party. *See United States v. Jones,* 475 F.2d 322, 324 (D.C.Cir.1972) (holding that period of time in considering defendant's pretrial motions, as well as the time consumed by exigencies of the indictment, not attributable to either party). In summary, there appear to be valid reasons for the delay in this case, although some of the delay can be attributable to Defendant. Therefore, on balance, we weigh the second factor of the *Barker* balancing test slightly in favor of the State.

### 3. Assertion of Right

{40} Defendant first asserted his constitutional right to a speedy trial just four months following his arrest by filing a motion to dismiss on the ground that he had not been arraigned within the 15–day time period required under Rule 5–604(A) NMRA 1998. Defendant argued that the failure to provide a timely arraignment deprived him of his constitutional right to a speedy trial. Defendant later filed a speedy-trial motion on February 12, 1997, five days before trial. The State concedes that Defendant timely asserted his right to a speedy trial. Even assuming that Defendant promptly asserted his right to a speedy trial, we note that at no time during the proceedings did Defendant ever demand a speedy trial as an alternative to his request for dismissal of the case. *See Tortolito,* 1997–NMCA–128, ¶ 17, 124 N.M. 368, 950 P.2d 811 (noting that assertion of right is to be given less weight when defendant does not request a speedy trial but only moves to dismiss for a denial of the right). We therefore weigh the third *Barker* factor in favor of Defendant, but not heavily.

### 4. Prejudice

{41} Under *Barker,* the constitutional right to a speedy trial protects against three types of prejudice: (1) oppres-sive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the possibility of impairment to the defense. *See Barker,* 407 U.S. at 532, 92 S.Ct. 2182. Of these, impairment to the defense is considered the most serious prejudice because it "skews the fairness of the entire system." *Id.*

{42} Defendant claims that he was prejudiced by the delay because he was incarcerated for the entire 11½–month period. He also claims that he suffered undue anxiety and concern during this period because he was prevented from performing his official duties as Sheriff of Cibola County. Additionally, because of his status as a publicly elected official and the publicity surrounding this case, Defendant claims that his pretrial incarceration and removal from office subjected him to severe humiliation and public obloquy. Defendant, however, does not contend that the delay impaired his defense in any way. *See Zurla,* 109 N.M. at 647, 789 P.2d at 595 (absent evidence that defense was hampered by delay, state's burden to show lack of prejudice is considerably lighter). Although we agree that Defendant has suffered prejudice on the first two interests protected by the constitutional right, the lack of actual prejudice to Defendant's ability to make a defense must be weighed against Defendant. *See Tortolito,* 1997–NMCA–128, ¶ 20, 124 N.M. 368, 950 P.2d 811 (noting that prejudice to defense is of greater importance than other types of prejudice). We conclude that this last prong of the balancing test weighs only slightly in favor of Defendant.

{43} Although none of the four factors weighs heavily in either side's favor under the balancing process, we conclude that the valid reasons for the delay, as well as reasons that may be attributable to Defendant, combined with the lack of any actual impairment to Defendant's defense, overcome the presumption of prejudice. We thus hold that Defendant's right to a speedy trial was not violated.

### C. Disclosure of Grand Jury Information

{44} Defendant claims that the grand jury indictment should be dismissed because the prosecutor in this case obtained and used confidential information from an

earlier grand jury proceeding in a different case relating to Defendant's removal from the Cibola County Sheriff's office. Defendant argues that the disclosure of the grand jury information by the Attorney General's office to the prosecutor in this case breached the secrecy required under Section 31–6–6(A). In particular, he argues that the disclosure frustrated an underlying policy of the grand jury-secrecy rule, which is "to prevent disclosure of derogatory information against persons who have not been indicted." *State v. Morgan,* 67 N.M. 287, 289, 354 P.2d 1002, 1004 (1960) (outlining reasons for grand jury secrecy). According to Defendant, the prosecutor's receipt of the grand jury information was an unlawful attempt to obtain additional evidence against Defendant, in violation of NMSA 1978, § 31–6–9.1 (1979) (providing that the prosecutor shall not use the grand jury solely to obtain additional evidence against an indicted person on the charge or accusation of the indictment). These actions, Defendant argues, amounted to prosecutorial misconduct, requiring dismissal of the grand jury indictment.

■ {45} We decline to address the merits of Defendant's argument because we cannot conclude from the present record that any showing of prejudice can be made. A grand jury indictment will be dismissed only if the defendant can affirmatively demonstrate how he was prejudiced by the prosecutor's alleged misuse of the protected grand jury information. *See State v. Martinez,* 97 N.M. 585, 588, 642 P.2d 188, 191 (Ct.App. 1982) (requiring defendant to show prejudice in challenging grand jury's determination of probable cause); *cf. State v. Dominguez,* 115 N.M. 445, 456, 853 P.2d 147, 158 (Ct.App. 1993) (holding that defendant must show "actual and substantial prejudice" before trial court will dismiss indictment for failure to receive target notice due to state's lack of due diligence). Defendant has failed to specifically inform us what grand jury information was improperly divulged to the prosecutor, whether the information was provided by other sources available to the prosecutor, and how the disclosure of the information could have swayed the grand jury to return an indictment against Defendant. Consequently, on the facts of this case, we conclude that the prosecutor's conduct does not warrant dismissal of the grand jury indictment.

## D. Sufficiency of the Evidence

■ {46} Defendant claims the evidence was insufficient to support the conviction of perjury under count three. When reviewing a claim of insufficiency of the evidence, we view the evidence in the light most favorable to the State and resolve conflicts and indulge all inferences to support the verdict. *State v. Sanders,* 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). We determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). We do not reweigh the evidence or substitute our judgment for that of the fact finder so long as there is sufficient evidence to support the verdict. *Id.* Finally, we review the sufficiency of the evidence in light of the erroneous instruction submitted to the jury and all the evidence presented in support of the conviction for perjury, including any wrongfully admitted evidence. *See State v. Rosaire,* 1996–NMCA–115, ¶ 20, 123 N.M. 250, 939 P.2d 597.

■ {47} Applying these standards, we conclude that there was sufficient evidence to support the conviction of perjury under count three. At trial, the State introduced evidence of Defendant's statements alleged in count three. The falsity of those statements and Defendant's knowledge of the untruthfulness of the statements can be inferred from the testimony of the State's witnesses establishing that Mr. Crain was not with Defendant when he went to Mrs. Benavidez' home, Mr. Crain's confession of the crime of perjury to the investigator with the District Attorney's Office, and the transcript of the February 2, 1996, contempt hearing. Because there was sufficient evidence presented at trial to convict Defendant under the deficient jury instruction, we hold that this case should be remanded for a new trial on count three. *See id.* ¶ 21 (remanding for retrial where

evidence was sufficient to convict defendant under defective jury instruction).

{48} Next, we consider Defendant's claim that count one of the indictment was insufficient to charge him with perjury and therefore should be dismissed. Defendant argues that, because Mr. Crain's testimony, rather than Defendant's testimony, is the basis of the perjury charge in count one, Defendant was charged with perjury "by way of implication," contrary to *Naranjo*, 94 N.M. at 410–12, 611 P.2d at 1104–06, and *Territory v. Lockhart*, 8 N.M. 523, 45 P. 1106 (1896). Both cases hold that:

> ... before a charge of perjury can be sustained, the following essentials are required: (1) the allegations must be direct and specific, not in terms of uncertain meaning or by way of implication; (2) the indictment must particularize where the testimony was false, a general allegation of falsity being insufficient; and (3) if the offense encompasses many allegedly perjurious statements "of which some might be true, and used only as the vehicle of falsity," the defendant must be told in the indictment "wherein, and to what extent, the statements alleged to have been made by him were false."

*Naranjo*, 94 N.M. at 412, 611 P.2d at 1106 (quoting *Lockhart*, 8 N.M. at 527–28, 45 P. at 1107).

{49} We conclude that the allegations in count one of the indictment were sufficient to charge Defendant with perjury as an accomplice. The indictment specifically recites the allegedly false testimony given by Mr. Crain at the show-cause hearing on February 2, 1996. The indictment further alleges that the testimony was false in that "[i]n truth, [Mr.] Crain was not with [Defendant] on the night of January 30, 1996, either at [Defendant's] home, in [Defendant's] car or at or near [Ms.] Benavidez' home." The indictment also indicates that the testimony was material to the question of whether Defendant "did not violate the [c]ourt's restraining order because he was engaged in a reasonable response by a law enforcement officer in appearing at [Ms.] Benavidez' house th[e] evening [in question]." Finally, the false testimony of Mr. Crain was directly attributable to Defendant in that he allegedly "help[ed], encouraged or caused th[e] crime of intentionally giving false testimony to be committed by [Mr.] Crain." We therefore conclude that count one of the indictment was sufficient.

{50} · Finally, as we proposed in our first calendar notice, we remand with instructions to vacate count two of the indictment. Under count two, the State had the burden of proving that Defendant knowingly testified falsely that: (1) Mr. Crain's statement was correct, and (2) Mr. Crain accompanied Defendant to the home of Mr. Sanchez. Defendant's allegedly false testimony that Mr. Crain's statement was accurate was also, in part, the basis for count three. Count two differs from count three only in that the former includes Defendant's statement regarding Mr. Crain's accompanying him to Mr. Sanchez' house. The latter, on the other hand, includes Defendant's statement regarding his visit to his ex-wife's house. We hold, however, as a matter of law, that it was immaterial whether Mr. Crain was with Defendant when he went to Mr. Sanchez' house. *See Gaudin*, 515 U.S. at 512, 115 S.Ct. 2310 (defining materiality of false statement). Despite our holding that materiality is a question to be decided by the jury, when reasonable minds would not differ on the question, it may be decided as a matter of law. *See State v. Jackson*, 116 N.M. 130, 134, 860 P.2d 772, 776 (Ct.App. 1993) (determining as a matter of law that only one conspiracy existed where "reasonable minds could not disagree that only one conspiracy existed"). As a result, the only valid basis for a conviction under count two was also the basis for a guilty verdict as to count three—the first alleged statement vouching for Mr. Crain's testimony. Because convictions under counts two and three would be duplicative, we reverse and remand with instructions to vacate count two of the indictment.

### E. Conspiracy to Commit Perjury

{51} Count five of the indictment alleged that Defendant knowingly combined with Mr. Crain to commit perjury in violation of Section 30–28–2. Defendant attacks count five

of the indictment as invalid because it does not specifically state the perjury Defendant allegedly conspired to commit. In support for this contention, Defendant relies again on *Naranjo,* 94 N.M. at 410–12, 611 P.2d at 1104–06, and *Lockhart,* 8 N.M. at 526–28, 45 P. at 1107. We note, however, that neither *Naranjo* nor *Lockhart* involved a charge of conspiracy to commit perjury.

{52} Initially, we determine that Defendant waived the issue of whether the indictment was sufficiently definite to charge him with conspiracy to commit perjury because he never moved for a statement of facts from the State pursuant to Rule 5–205(C) NMRA 1998. *See State v. Martin,* 94 N.M. 251, 253, 609 P.2d 333, 335 (Ct.App. 1980) (holding that failure to request statement of facts precluded defendant from asserting claim on appeal that trial court should have dismissed count for conspiracy to commit felony for insufficiency of charge in information).

{53} Even if Defendant had properly preserved this issue, however, we would conclude that count five of the indictment was sufficiently definite and specific to apprise Defendant of the crime with which he was charged and to enable him to prepare his defense. *See id.* (noting that purpose of indictment is to inform defendant of charges against him); *State v. Johnson,* 105 N.M. 63, 67, 728 P.2d 473, 477 (Ct.App.1986) ("Sufficiency of an indictment is measured by whether it adequately apprises the accused of the offense intended to be charged, what he must be prepared to defend against, and by whether it is specific enough to make a plea of double jeopardy possible.") The indictment in this case charged Defendant with conspiracy to commit perjury as well as three separate counts of perjury, which adequately informed him of the underlying perjury allegations. *Cf. Martin,* 94 N.M. at 253, 609 P.2d at 335 (holding that information charging conspiracy to commit a felony as well as three separate felonies sufficiently gave the defendant notice of the underlying felony or felonies); *see also People v. Smith,* 22 Ill. App.3d 377, 317 N.E.2d 300, 303 (1974) (noting that "conspiracy to commit perjury does not need to be as specifically stated or estab-

lished as perjury itself"). We also note that one may conspire to commit perjury without committing the crime of perjury, and still be found guilty of conspiracy to commit perjury. The offense of conspiracy is complete when the agreement is reached. *See State v. Villalobos,* 120 N.M. 694, 697, 905 P.2d 732, 735 (Ct.App.1995). The indictment therefore need not specify the perjury Defendant allegedly conspired to commit.

### F. Admission of Mr. Crain's Statement

{54} In *Williamson v. United States,* 512 U.S. 594, 596, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), the United States Supreme Court clarified the application of Fed. R.Evid. 804(b)(3), concerning the admission of an unavailable declarant's statement against penal interest as an exception to the hearsay rule. *Williamson* held that statements not individually against interest could not be admitted under the hearsay exception even though they were part of a broader narrative that was generally self-inculpatory. *See Williamson,* 512 U.S. at 599–601, 114 S.Ct. 2431. "Whether a statement is in fact against interest must be determined from the circumstances of each case." *Id.* "The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else." *Id.* Instead, the trial court must engage in a careful, fact-intensive inquiry to determine whether, "in light of all the surrounding circumstances," the individual "statement was sufficiently against the declarant's penal interest." *Id.* at 603–04, 114 S.Ct. 2431. In *Chavez v. City of Albuquerque,* 1997–NMCA–111, ¶ 9, 124 N.M. 239, 947 P.2d 1059, this Court adopted the analysis in *Williamson* in interpreting New Mexico's Rule 11–804(B)(3), which is identical to the federal rule.

{55} As we previously noted, Mr. Crain died several months before the trial. Consequently, the State sought to introduce a written transcript of his interview with Investigator Malone as a statement against penal interest under Rule 11–804(B)(3). The State indicated that, in accordance with *William-*

*son,* it had redacted Mr. Crain's statements to exclude nonself-inculpatory and neutral remarks collateral to his self-inculpatory statement. Defendant, nonetheless, objected to numerous portions of the edited statement as being nonself-inculpatory and, therefore, inadmissible under *Williamson.* Specifically, Defendant argued that many of Mr. Crain's statements from pages 11, 12, 13, 15 and 16 of Exhibit 7 pertained to Defendant's leadership role and participation in the alleged perjury, solicitation and conspiracy to commit perjury and, therefore, could be considered self-serving or shifting the primary responsibility for the alleged wrongdoing to Defendant. Defendant also argued that Mr. Crain gave the statement to Investigator Malone in return for the investigator's promise not to arrest him for anything said during the interview.

{56}  Before making its evidentiary ruling, the trial court noted on the record that it had carefully examined each challenged statement in Mr. Crain's fuller statement to determine if it was self-inculpatory as required under *Williamson.* The trial court ruled that the entire statement, as redacted by the State, was admissible as a statement against interest under Rule 11–804(B)(3).

{57}  We review the admissibility of Mr. Crain's statement as a statement against interest under a de novo standard of review. *See Crespin v. State,* 144 F.3d 641, 648 n. 4 (10th Cir.1998) (conducting de novo review of *Williamson* inquiry); *Chavez,* 1997–NMCA–111, ¶¶ 12–15, 124 N.M. 239, 947 P.2d 1059 (applying *Williamson* on review); *cf. State v. Sanchez,* 112 N.M. 59, 63, 811 P.2d 92, 96 (Ct.App.1991) (stating that whether a statement bears sufficient indicia of reliability to allow admission under Rule 11–804(B) is question of law).

{58}  Under this standard and the reasoning in *Williamson,* we agree with Defendant that Mr. Crain's statement, like the statements in *Williamson* and *Chavez,* contained both self-inculpatory and nonself-inculpatory declarations. As we observed in *Chavez,* "when the declarant speaks to law enforcement, the declarant may well be disposed to downplay the declarant's involvement at the expense of the others to further the declar-

ant's best interest." *Chavez,* 1997–NMCA–111, ¶ 14, 124 N.M. 239, 947 P.2d 1059. Because Investigator Malone was a law enforcement officer conducting an investigation of suspected criminal activity, it is quite possible that this dynamic occurred during his exchange with Mr. Crain. Consequently, based on *Williamson* and *Chavez,* we hold that Mr. Crain's statements were not admissible under Rule 11–804(B)(3) and should be excluded from evidence if the case is retried.

## III. CONCLUSION

{59}  We hold that: (1) under *Gaudin,* 515 U.S. at 511, 115 S.Ct. 2310, the trial court committed reversible error by failing to instruct the jury on the essential element of materiality in the perjury prosecution; (2) Defendant was not deprived of a speedy trial; (3) Defendant failed to show how he was actually prejudiced by the disclosure of earlier grand jury information to the prosecutor in this case; (4) sufficient evidence supported the conviction of perjury under count three; (5) count one of the indictment was sufficient to charge Defendant with perjury as an accomplice; (6) count two of the indictment should be vacated because it is duplicative of count three; (7) Defendant waived his claim that the conspiracy count of the indictment was fatally deficient; and (8) the trial court erred in admitting Mr. Crain's statement to Investigator Malone as a statement against interest under Rule 11–804(B)(3). We affirm Defendant's conviction for conspiracy to commit perjury, reverse his convictions under the three counts of perjury, and remand with instructions to vacate count two and for a new trial on counts one and three.

{60}  **IT IS SO ORDERED.**

FLORES and ARMIJO, JJ., concur.