This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                  **NO. 31,286**

**GREGORY ALLEN KETCHUM,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM
Sri Mullis, Assistant Attorney General
Albuquerque, NM

for Appellee

The Alarid Law Firm, P.C.
Michael Alarid, Jr.
Camille Cordova
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

{1} Defendant Gregory Allen Ketchum appeals his convictions for two counts of criminal sexual penetration of a minor (CSPM), sexual exploitation of a minor, three counts of contributing to the delinquency of a minor (CDM), aggravated battery, and aggravated assault. On appeal, Defendant argues that (1) insufficient evidence supported Defendant's convictions for aggravated battery, aggravated assault, both CSPM counts, and one count of CDM; (2) Defendant's due process and double jeopardy rights were violated because the evidence presented at trial was insufficient to show that both CSPM counts, the sexual exploitation of a minor count, and one count of CDM occurred during the time periods in the amended indictment; (3) the district court erred in denying Defendant's motion to suppress the testimony of the alleged victim at trial; and (4) the district court violated Defendant's confrontation rights when it restricted the scope of the cross-examination of the alleged victim. We hold that (1) the State presented sufficient evidence to support Defendant's convictions; (2) the district court's judgment did not deprive Defendant of due process or his rights under double jeopardy because the evidence supported the jury verdict that the crimes occurred during the time periods alleged in the amended indictment; (3) the district court did not abuse its discretion in determining that the victim was competent to testify at trial; and (4) the district court did not unduly restrict the cross-

2

examination of the victim. Accordingly, we affirm.

**BACKGROUND**

{2}	Defendant appeals his convictions for two counts of CSPM, sexual exploitation of a minor, three counts of CDM, aggravated battery, and aggravated assault. The jury based Defendant's sexual exploitation of a minor conviction on allegations that Defendant requested and received videotapes from his biological daughter, C.K., that showed C.K. engaging in various sexual acts. C.K. testified that she began making the videotapes for Defendant during her freshman year of high school. She testified that she met a psychedelic mushroom dealer who asked her to make a pornographic film for him in exchange for mushrooms. C.K. informed Defendant of the request, and Defendant asked C.K. if she would make pornographic films for him. C.K. testified that she made several films of herself for Defendant in exchange for alcohol, marijuana, and other items such as clothing and movies. During the process of making these videos, C.K. testified that Defendant wrote notes telling her what he wanted her to do on the video and left them under her door. Defendant also provided sex toys and pornographic materials for C.K. for use in making the videos. Defendant's three convictions for CDM were based on providing alcohol, marijuana, and pornographic materials to C.K., one count for each.

{3} Defendant's two CSPM convictions were based on an incident that occurred when C.K. was sixteen after she attended a party at the apartment complex in which she lived with Defendant. Although the jury heard conflicting testimony about the events of the night in question, C.K. testified that she went to a party with another individual and became intoxicated. C.K. testified that she did not know how she got home to Defendant's apartment, but awakened to Defendant undressing her. Defendant took off C.K.'s underwear and began performing oral sex on her. Defendant then removed his pants and penetrated C.K. C.K. pushed him off her and ran out of Defendant's apartment to the apartment of Nick King, who lived at the same apartment complex, wearing only a black shirt and nothing from the waist down.

{4} The aggravated battery and aggravated assault convictions arose out of an incident that occurred shortly after this previous incident. C.K. told a friend, Rebecca, that Defendant raped her. Rebecca encouraged C.K. to leave Defendant's apartment and to stay with Rebecca. Rebecca accompanied C.K. to Defendant's apartment to retrieve some of C.K.'s possessions. While Rebecca and C.K. were at Defendant's apartment, Defendant and C.K. began arguing, and Defendant grabbed C.K. around the neck and began strangling C.K. Rebecca stepped in between Defendant and C.K. As C.K. and Rebecca left Defendant's apartment, they heard the sound of a bullet being chambered in a firearm. When they turned around, Defendant pointed a pistol

4

at them.

**SUFFICIENCY OF THE EVIDENCE**

**Standard of Review**

{5}    We first address Defendant's arguments that the State presented insufficient evidence for Defendant's convictions for two counts of CSPM, one count of CDM for providing pornographic materials to C.K., aggravated battery, and aggravated assault. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198 (internal quotation marks and citation omitted). "[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Baca*, 1997-NMSC-059, ¶ 14, 124 N.M. 333, 950 P.2d 776 (internal quotation marks and citation omitted). We view the evidence in the light most favorable to, and indulge all inferences in favor of, the verdict. *Sena*, 2008-NMSC-053, ¶ 10; *State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). If there is sufficient evidence supporting the verdict, we do not reweigh the evidence or substitute our judgment for that of the factfinder. *State v. Fuentes*, 2010-NMCA-027, ¶ 13, 147 N.M. 761, 228 P.3d 1181.

**Time Periods in the Amended Indictment for CSPM and Sexual Exploitation of a Minor**

{6}   Defendant contends that the State presented insufficient evidence for both CSPM counts and for the count of sexual exploitation of a minor because the State presented no evidence that Defendant committed the crimes in the time periods alleged in the amended indictment.   We first address Defendant's argument that insufficient evidence supports his convictions for CSPM. For both counts of CSPM, the amended grand jury indictment and the jury instructions required the State to prove that Defendant committed CSPM "between the dates of March 15, 2008 and April 23, 2008."

{7}   Defendant contends that only C.K. and Nick King testified regarding the circumstances leading to the CSPM counts and that neither testified regarding the date or the time period of the incident.   However, Defendant overlooks key testimony related to the time periods for the CSPM counts.

{8}   Rebecca testified as a witness for the State.   She testified that C.K. spent the night with her on April 23, 2008, after C.K. informed Rebecca that she was moving out of Defendant's home.   Rebecca took C.K. to Defendant's house and helped C.K. collect her possessions.   C.K. lived with Rebecca for roughly a month following April 23, 2008.   Rebecca testified that although she originally believed that the incident leading to the CSPM charges occurred the night before C.K. came to live at her house,

6

Rebecca later learned that it had occurred "a few weeks prior, and it took [C.K. awhile] to call . . . and tell [Rebecca] about it." Rebecca's testimony is sufficient for a reasonable factfinder to conclude that the incident leading to the CSPM counts occurred a few weeks prior to April 23, 2008, which was within the time periods in the amended indictment. *See Baca*, 1997-NMSC-059, ¶ 14. Therefore, the State presented sufficient evidence to support Defendant's convictions for both CSPM counts. *See Sena*, 2008-NMSC-053, ¶ 11 (relying on the proposition that it is the exclusive province of the jury to resolve ambiguous testimony in determining that sufficient evidence supported a jury's conclusion that the defendant touched the victim twice during the alleged charging period despite the child victim's inconsistent testimony).

{9}    We acknowledge Defendant's argument that both King, who testified about his recollection the night Defendant raped C.K., and C.K. testified that they had no recollection of the date that the incident occurred. Indeed, King expressly stated that he did not keep track of the date when the incident occurred. C.K. also did not testify regarding a specific date of the incident. However, in looking at the sufficiency of the evidence, we only look to whether the evidence supports the verdict reached, not whether the evidence supports acquittal. *See State v. Stanley*, 2001-NMSC-037, ¶ 41, 131 N.M. 368, 37 P.3d 85 ("Contrary evidence supporting acquittal does not provide

7

a basis for reversal because the jury is free to reject [the d]efendant's version of the facts.").

{10}    Sufficient evidence also supports the jury's verdict that the count of CDM for providing pornographic materials to C.K. occurred during the time period alleged in the amended indictment. In order to convict Defendant of CDM, the State had to prove that Defendant provided pornographic materials to C.K. "on or between the 29th day of April, 2007, and the 29th day of April, 2008." J.C., a friend of C.K., testified that she lived with Defendant and C.K. from the summer of 2007 until December 2007. J.C. testified that, during this time, C.K. kept pornographic videos in her bathroom. Additionally, C.K. testified generally that Defendant provided her with pornographic materials when she was sixteen for C.K. to use when making videos of herself performing sexual acts for Defendant. C.K.'s date of birth is in September 1991, and she therefore turned sixteen in September 2007. This testimony is sufficient for a reasonable factfinder to conclude that Defendant committed CDM by providing pornographic materials to C.K. during the time period alleged in the indictment. *See Baca*, 1997-NMSC-059, ¶ 14.

**Aggravated Battery and Aggravated Assault**

{11}    Defendant next argues that the State presented insufficient evidence to support Defendant's convictions for aggravated battery causing great bodily harm to the

victim and aggravated assault with a deadly weapon.

{12} In order for the jury to convict Defendant of aggravated battery with great bodily harm, the State had to prove beyond a reasonable doubt that

1. . . . [D]efendant touched or applied force to C.K. by choking her;

2. . . . [D]efendant intended to injure C.K.;

3. . . . [D]efendant caused great bodily harm to C.K. or acted in a way that would likely result in death or great bodily harm to C.K.

*See* NMSA 1978, § 30-3-5 (1969). C.K. testified that Defendant put both of his hands over C.K.'s throat and choked her. Additionally, Rebecca testified that Defendant choked C.K. until Rebecca stepped in between them. This evidence is sufficient for a reasonable factfinder to conclude that Defendant choked C.K., intentionally tried to injure C.K., and acted in a way that would likely result in death or great bodily harm. *See Sena*, 2008-NMSC-053, ¶ 10 (stating that the test for sufficiency of the evidence is whether evidence "exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction" (internal quotation marks and citation omitted)). Sufficient evidence therefore supported Defendant's conviction for aggravated battery with great bodily harm.

{13} In order for the jury to convict Defendant of aggravated assault with a deadly weapon, the State had to prove beyond a reasonable doubt that

1. . . . [D]efendant assaulted C.K. with a handgun, a firearm;

9

> 2.     . . . [D]efendant's conduct caused C.K. to believe . . .
> [D]efendant was about to intrude on C.K.'s bodily integrity
> or personal safety by touching or applying force to C.K. in
> a rude, insolent or angry manner;
>
> 3.     A reasonable person in the same circumstances as
> C.K. would have had the same belief[.]

*See* NMSA 1978, § 30-3-2(A) (1963). Defendant appears only to contest the evidence regarding the first element: that Defendant assaulted C.K. with a handgun. The State presented testimony from C.K. that Defendant followed Rebecca and C.K. out of Defendant's apartment and pointed a firearm at C.K. and Rebecca. Rebecca additionally testified that Defendant pointed a firearm at Rebecca and C.K. as they left Defendant's apartment. Again, this testimony is sufficient for a reasonable factfinder to conclude that Defendant assaulted C.K. with a firearm. *See Baca*, 1997-NMSC-059, ¶ 14.

{14}     Defendant argues that the evidence was insufficient to support the aggravated assault with a deadly weapon count because of disparities between the versions of the events provided during the testimony at trial. For example, C.K. and King testified that Defendant was alone in the apartment before the incident while Rebecca testified that there was another man on the couch watching television, and C.K and Rebecca both testified that Defendant pointed a handgun at them while King testified that he observed Defendant pointing a shotgun at C.K. and Rebecca. Additionally, Detective

10

Brian Sanchez testified that he executed a search warrant and only found a .22 caliber pistol, not a shotgun, and that this testimony was inconsistent with Rebecca's testimony that the handgun Defendant pointed at C.K. and Rebecca was a .45 caliber Smith and Wesson handgun. Although the testimony was inconsistent in some regards, it is the role of the jury to resolve factual inconsistencies in the evidence, and we will not disturb a jury verdict that is supported by sufficient evidence. *See State v. Ortiz-Burciaga*, 1999-NMCA-146, ¶ 22, 128 N.M. 382, 993 P.2d 96 (holding that it is the "exclusive province of the jury to resolve factual inconsistencies in testimony" (internal quotation marks and citation omitted)).

**TIME PERIODS IN AMENDED INDICTMENT**

{15}     Defendant next argues that the district court's judgment deprived him of his double jeopardy and due process rights "based on the evidence introduced at trial regarding the times [of commission of] the offenses alleged" in the two CSPM counts, the sexual exploitation of a minor count, and the CDM for providing C.K. with pornographic materials count. We review Defendant's due process and double jeopardy claims de novo. *See State v. Dominguez*, 2008-NMCA-029, ¶ 5, 143 N.M. 549, 178 P.3d 834; *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77.

{16}     Defendant relies on *Dominguez* for the proposition that "[a]n indictment that

fails to provide a criminal defendant with adequate notice of the charges against him is a deprivation of due process, unless such counts can be linked to particular, distinguishable criminal acts." In *Dominguez*, the state charged the defendant with ten identical counts of criminal sexual contact of a minor (CSCM) over a ten-week period. 2008-NMCA-029, ¶ 2. After the defendant moved to dismiss the indictment or to compel the state to name specific instances of the alleged abuse, the state filed a bill of particulars providing "some" information about specific instances of the defendant's conduct. *Id.* ¶¶ 3-4. The district court concluded that the bill of particulars supported five counts of CSCM and dismissed the remaining five counts. *Id.* ¶ 4. After the state appealed the dismissal of the five counts, this Court affirmed, holding that the district court "properly dismissed those five counts that could not be linked to a particular incident of abuse" under both due process and double jeopardy because the indictment did not provide the defendant with sufficient notice of the incidents for the dismissed counts for the defendant to defend himself against the particular charges. *Id.* ¶¶ 10, 14.

{17}     The decision in *Dominguez* echoed this Court's analysis and conclusion in *State v. Baldonado*, 1998-NMCA-040, 124 N.M. 745, 955 P.2d 214. In *Baldonado*, this Court addressed a two-count indictment containing a charging period of two years. *Id.* ¶¶ 3-4. The defendant filed a motion for a bill of particulars requesting an order

12

requiring the state to approximate the time that the alleged conduct occurred. *Id.* ¶ 4. The state asserted that it chose the two-year time period because the alleged conduct occurred when the victim was five or six years old, but the victim could not provide more specificity. *Id.* ¶ 9. This Court adopted a case-by-case approach designed to determine "whether an indictment is reasonably particular with respect to the time of the offense." *Id.* ¶ 26. The approach adopted requires this Court to examine nine factors to determine first, whether the indictment is reasonably particular under the circumstances of the case and second, if not, whether the defendant is prejudiced by that failure. *Id.* ¶¶ 27, 29.

{18} Defendant does not make a valid due process or double jeopardy claim under *Dominguez* or *Baldonado*. First, Defendant does not allege that the amended indictment either lacked specificity to put him on reasonable notice of the basis of conduct making up the charges or that the time periods in the amended indictment were unreasonably long such as to deprive Defendant of his due process. Instead, Defendant's argument is premised on the single assertion that the State failed to present evidence that Defendant committed the underlying acts in the time periods alleged in the indictment. This argument is identical to, and better addressed in, a challenge to the sufficiency of the evidence, which we have already addressed regarding both CSPM counts in the previous section. As we determined, the State

13

presented sufficient evidence for the CSPM counts regarding the time periods in the indictment, and the premise of Defendant's argument for the CSPM counts therefore fails. Additionally, Defendant did not challenge the sufficiency of the evidence regarding the time period alleged for the sexual exploitation of a minor count.

{19}     Second, to the extent that Defendant does argue that the amended indictment failed to provide sufficient notice of the charges, Defendant waived his challenge by failing to file a motion under Rule 5-205(C) NMRA. Under Rule 5-205(C), a criminal defendant may file a motion asking the district court to order the state to file a statement of facts if the defendant deems that the notice provided in the indictment is insufficient, including the time of commission of the alleged offense. *See* Rule 5-205(A)(1). Defendant did not file a motion for a statement of facts regarding any of the charges in the amended indictment and therefore waived his argument that the amended indictment gave insufficient notice as to the charges. *See State v. Benavidez*, 1999-NMCA-053, ¶ 52, 127 N.M. 189, 979 P.2d 234 (holding that the defendant "waived the issue of whether the indictment was sufficiently definite to charge him with conspiracy to commit perjury because he never moved for a statement of facts from the [s]tate pursuant to Rule 5-205(C)"), *vacated on other grounds by* 1999-NMSC-041, 128 N.M. 261, 992 P.2d 274. The district court's judgment therefore did not deprive Defendant of due process or his rights under double jeopardy.

**SUPPRESSION OF C.K.'S TESTIMONY**

{20} Defendant next argues that the district court erred in denying his motion to suppress the testimony of C.K. at trial because C.K. was incompetent to testify under Rule 11-601 NMRA. Defendant contends that C.K. failed to meet the minimum standard necessary to permit a witness to testify because (1) deposition testimony of Dr. Elizabeth Penland, hired by the State to evaluate C.K., established that C.K. did not have a "full appreciation of reality and telling the truth;" (2) CYFD records showed that C.K. previously made false allegations of physical abuse against her mother and sexual abuse against her cousin; (3) C.K. was expelled from school for cutting the necks of other students and licking their blood; (4) C.K. attempted suicide four months prior to the allegations against Defendant and told hospital personnel that she took twenty antidepressant capsules the day prior to the attempt; (5) medical records showed that in the months preceding the allegations against Defendant, C.K. had impaired recent and remote memory; and (6) C.K. told various witnesses, police, and mental health professionals eleven different conflicting versions of the events leading to Defendant's convictions.

{21} Rule 11-601 provides that "[e]very person is competent to be a witness unless these rules provide otherwise." Ordinarily, the party challenging competency bears the burden to show the witness is incompetent. *State v. Manlove*, 79 N.M. 189, 190,

441 P.2d 229, 230 (Ct. App. 1968), *superceded by rule on other grounds as stated in State v. Hueglin*, 2000-NMCA-106, 130 N.M. 54, 16 P.3d 1113. This Court has stated that "a witness wholly without capacity is difficult to imagine[and t]he question is one particularly suited to the jury as one of weight and credibility[.]" *Hueglin*, 2000-NMCA-106, ¶ 22 (alteration, internal quotation marks, and citation omitted). In determining whether witnesses are competent to testify, the standard is whether the testimony of the witnesses would "permit any reasonable person to put any credence in their testimony" regarding "the matters on which they will testify[.]" *Id.* (internal quotation marks and citation omitted). This Court reviews "the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. Although "we generally apply an abuse of discretion standard where the application of an evidentiary rule involves an exercise of discretion or judgment, . . . we apply a de novo standard to review any interpretations of law underlying the evidentiary ruling." *Dewitt v. Rent -A-Ctr., Inc.*, 2009-NMSC-032, ¶ 13, 146 N.M. 453, 212 P.3d 341.

{22}     We begin by examining Dr. Penland's testimony and Defendant's argument that Dr. Penland's testimony established that C.K. was incompetent to testify because she did not have the capacity to tell the truth. Dr. Penland testified in a pre-trial

16

deposition regarding C.K.'s bipolar mood disorder. She testified that prior to treatment and hospitalization, C.K. lacked "a full appreciation of reality and telling the truth." However, Dr. Penland's testimony referred to C.K.'s capacity for telling the truth at the time the allegations were made and when C.K. was hospitalized, not at the time that C.K. testified at trial. During the deposition, the following exchange took place:

> Q. Do you think [C.K.] has an appreciation for the importance of telling the truth?
>
> A. At that point or right now?
>
> Q. At that point.
>
> A. At that point, I think she was very—feeling very out of control, that her life was spinning out of control at that point, and I think she had—she—her self-control and self-control of her life was minimal, and I think that made her not have a full appreciation of reality and telling the truth.
>
> I think she had been very traumatized[.]
>
> . . . .
>
> Q. . . . . Are you talking about after she was medicated or before?
>
> A. During this period of time, she was not stable on her medication throughout much of the hospitalization. It wasn't—and so she had been medicated, but they weren't finding the exact right combination of meds.
>
> Q. Okay.

A.    So I think . . . she did not have a full appreciation, to answer your question . . . [o]f telling the truth or what reality [is.]

{23}    Dr. Penland's testimony therefore did not address whether C.K. lacked the ability to tell the truth at the time of trial. Defendant therefore failed to meet his burden in establishing that C.K. was not competent to testify at the time of trial, and the district court did not abuse its discretion in permitting the jury to determine the credibility of C.K.'s testimony based on Dr. Penland's deposition testimony. *See State v. Ruiz*, 2007-NMCA-014, ¶ 23, 141 N.M. 53, 150 P.3d 1003 (stating that in "New Mexico, we apply a general presumption that all persons are competent to appear as witnesses").

{24}    We reach the same conclusion regarding Defendant's arguments that C.K.'s suicide attempt four months prior to the allegations against Defendant, C.K's expulsion from school and claims that she was a vampire, and medical records showing that in the months preceding the allegations against Defendant C.K. had impaired recent and remote memory establish that C.K. was incompetent to testify. C.K.'s mental state and impaired memory at the time of the allegations and her subsequent hospitalization do not shed light on C.K.'s capacity for telling the truth at the time of the trial.  To the extent that C.K.'s impaired memory and mental state at the time of the allegations affect her ability to recall the accuracy of the events leading to Defendant's charges, it is the province of the jury to weigh these factors in

18

assigning credibility. *See id.* ¶¶ 21, 23-25 (relying on the "core principle of modern civil and criminal procedure, whereby questions of credibility are consigned to juries, rather than judges" in determining that tainted or coercive interview techniques used on a minor witness did not render the witness incompetent to testify despite the district court acknowledging the "possibility that taint occurred" (internal quotation marks omitted)).

{25}     Regarding Defendant's argument that C.K. told various witnesses, police, and mental health professionals eleven different conflicting versions of the events leading to Defendant's convictions, we disagree that the apparent inconsistencies rendered C.K.'s testimony so suspect that it would not permit "any reasonable person to put any credence in [the] testimony." *Hueglin*, 2000-NMCA-106, ¶ 22 (internal quotation marks and citation omitted). Our rules of evidence provide that a witness's testimony may be impeached by prior statements of the witness. *See* Rule 11-613 NMRA; Rule 11-607 NMRA. Any prior inconsistent statements of a witness can and should be considered by the jury in assigning credibility to the witness's testimony. *See State v. Macias*, 2009-NMSC-028, ¶ 20, 146 N.M. 378, 210 P.3d 804 ("[I]t is generally true that a witness's prior inconsistent statements may be used to cast doubt on the witness's credibility."), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110. Indeed, Defendant cross-examined C.K. regarding various

statements she made to investigators and her memory regarding the statements. The district court therefore did not abuse its discretion in determining that Defendant did not meet his burden of establishing that C.K. was incompetent to testify at trial.

**RESTRICTION OF C.K.'S CROSS-EXAMINATION**

{26}     Defendant next argues that the district court violated his right to confront witnesses by unduly limiting the cross-examination of C.K. Particularly, Defendant argues that the district court's ruling granting the State's motion in limine prohibiting the introduction of evidence violated his confrontation rights. The evidence included CYFD records of C.K.'s prior false report of abuse by her mother; C.K.'s belief that she was a vampire; C.K.'s statements that she once tortured a kitten; C.K.'s dressing inappropriately, wishing ill will upon her teachers and classmates, being a bad influence on other children, and threatening hospital staff; evidence of other traits of C.K. including her sexual orientation, interest in tattoos, Satanism and gothism; C.K.'s history of mental health problems and abuse; C.K's expulsion from school for cutting the necks of her fellow students and licking their blood; and C.K.'s hospital records. We review Defendant's Confrontation Clause claim de novo. *State v. Martinez*, 1996-NMCA-109, ¶ 14, 122 N.M. 476, 927 P.2d 31 ("While the scope of cross-examination usually lies within the sound discretion of the district court, Confrontation Clause claims are issues of law that we review de novo.").

{27}     Initially, we address the State's argument that Defendant failed to preserve his Confrontation Clause argument that the district court unduly restricted C.K.'s testimony.  In order "[t]o preserve a question for review[,] it must appear that a ruling or decision by the district court was fairly invoked, but formal exceptions are not required[.]" Rule 12-216(A) NMRA.  The State filed the motion in limine to prevent this testimony in anticipation of Defendant eliciting it in trial.  The district court held a hearing on the motion on the first day of trial and addressed the merits of all the categories of anticipated testimony in the State's motion in limine.  Defendant raised the Confrontation Clause in the hearing as well as in his motion to reconsider the ruling on the State's motion in limine.  Defendant therefore fairly invoked a ruling by the district court on his argument that by granting the State's motion in limine, it infringed on Defendant's confrontation rights, and the issue is properly before this Court.

{28}     The United States Supreme Court has held that if "cross-examination is unduly restricted, a constitutional error results." *See Martinez*, 1996-NMCA-109, ¶ 14 (citing *Davis v. Alaska*, 415 U.S. 308, 318 (1974)).  In determining whether a district court's restriction of cross-examination violates a defendant's right to confrontation, we "focus[] not just on the defendant's right to cross-examine the witness, but on whether that right was effective." *State v. Stephen F.*, 2008-NMSC-037, ¶ 23, 144 N.M. 360,

188 P.3d 84 (internal quotation marks and citation omitted). However, this right is not absolute and does not provide a defendant an unfettered right to cross-examine without limitation. Our Supreme Court has stated that a court must "consider the effect of excluding such evidence on [the] defendant's right to a fair trial and balance that effect against the potential prejudice to the truthfinding process itself." *State v. Johnson*, 1997-NMSC-036, ¶ 25, 123 N.M. 640, 944 P.2d 869 (internal quotation marks and citation omitted). Further, "[a] defendant must specify the issue or issues the evidence is intended to address and demonstrate how the evidence is truly probative on those issues[.]" *Id.* ¶ 33 (internal quotation marks and citation omitted). It is under this framework that we examine whether the district court abused its discretion in its rulings in limine.

**{29}** We begin by discussing the State's motion in limine and group the various individual categories of testimony about which the State sought to prevent Defendant from cross-examining C.K. We also consider Defendant's proffer regarding the purpose the testimony would have served in presenting his defense. We then determine whether the district court's ruling unduly restricted the cross-examination of C.K. First, the State sought to prohibit Defendant from cross-examining C.K. about prior false allegations of abuse by her mother and to prevent Defendant from introducing the CYFD records into evidence. Defendant argued that limiting

testimony and the introduction of the CYFD records infringed on Defendant's defense that C.K. makes allegations for shock value regardless of truth, including to authorities. The district court ruled that the evidence of the prior allegations was relevant to the defense but that Defendant was limited to asking C.K. and C.K.'s mother about the allegations and that the CYFD records could not be used as extrinsic evidence.

**{30}** The district court did not unduly restrict the cross-examination of C.K. contrary to Defendant's right to confrontation. The district court properly recognized that our rules of evidence provide that a party may inquire about specific instances of untruthfulness on cross-examination and allowed Defendant the ability to cross-examine C.K. about her prior allegations of abuse. *See* Rule 11-608(B) NMRA (allowing cross-examination on specific instances of conduct that are probative of the character for truthfulness of the witness). To this end, Defendant cross-examined C.K. about the allegations C.K. made against her mother. C.K. testified that a teacher reported the allegations, that her mother did hit her, but that it was not forceful. Although the district court did not allow the CYFD report to be admitted into evidence as extrinsic evidence, this conclusion is mandated by our evidentiary rules. *See id.* (stating that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for

truthfulness"); *State v. Scott*, 113 N.M. 525, 530, 828 P.2d 958, 963 (Ct. App. 1991) (stating that, under the rules of evidence, the method of proof of prior false allegations prohibits the use of extrinsic evidence).  Defendant does not argue that the district court's conclusion regarding Rule 11-608(B) was error, nor does he argue how the inability to use the report as extrinsic evidence impairs his defense in light of his ability to cross-examine C.K. and C.K.'s mother about the prior allegations of abuse.

{31}     Second, the State's motion in limine moved to exclude testimony or evidence regarding other beliefs, interests, and behaviors of C.K., including allegations that C.K. threatened UNMH Children's psychiatric staff, was interested in Satanism, tattoos, and gothism, was expelled for drinking blood of other students, dressed inappropriately, and wished ill will on her students and classmates, as well as information regarding her sexual orientation.  Defendant argued that evidence regarding these categories was relevant to his defense that C.K. made statements for shock value regardless of truth and that C.K. has a history of mental and behavioral problems prior to the allegations.  Defendant further argued that this evidence was also pertinent to UNMH's diagnosis of post traumatic stress disorder (PTSD) that C.K.'s psychiatrist attributed to abuse by Defendant.  In each of these categories, the district court ruled that the evidence is improper character evidence not dealing with truthfulness or false reporting, that the evidence was irrelevant, or that, assuming some

relevance, the prejudicial effect outweighed the probative value. As to C.K.'s sexual orientation, the district court permitted testimony regarding C.K.'s relationship with J.C., who was testifying on behalf of the State, in order for Defendant to show witness bias. Additionally, the district court stated that if Defendant produced any evidence that "would make any of these other areas relevant, then [Defendant could ask the district court] to reconsider this ruling."

**{32}** The district court did not abuse its discretion in determining that Defendant did not adequately show a theory of admissibility for this evidence. *See Johnson*, 1997-NMSC-036, ¶ 33 ("A defendant must specify the issue or issues the evidence is intended to address and demonstrate how the evidence is truly probative on those issues[.]" (internal quotation marks and citation omitted)). Threats made to hospital staff; C.K.'s mode of dress and interest in Satanism, tattoos, and gothism; information regarding her sexual orientation; and C.K.'s expulsion for drinking blood of other students; and wishing ill will on her students and classmates either do not directly involve C.K. making statements for shock value or are only indirectly related to the issues in this case. Defendant also does not argue on appeal how any of this evidence would have been relevant to the testimony regarding C.K.'s diagnosis of PTSD. *See State v. Neswood*, 2002-NMCA-081, ¶ 10, 132 N.M. 505, 51 P.3d 1159 (holding that a defendant waived his appeal on a matter when the appellate briefing contained no

25

actual argument with regard to the application of the relevant rule to the facts of the defendant's case).

{33} Third, the State's motion in limine sought to exclude testimony regarding statements that C.K. made that she believed she was a vampire and that she told a friend that she tortured her kitten. Defendant argued that the testimony was relevant to his defense that C.K. made outrageous and shocking statements for the sole purpose of shocking people and that the allegations against Defendant were such statements. The district court disagreed that the statements were relevant and that, further, assuming some relevance, the prejudicial impact outweighed the probative value. Specifically regarding the vampire statement, the district court also ruled that there was no factual basis that C.K. made this claim and that the statement was made by her mother to CYFD.

{34} Regarding this third category, the district court did not abuse its discretion in determining that Defendant did not adequately show a theory of admissibility for this evidence. *See Johnson*, 1997-NMSC-036, ¶ 33 ("A defendant must specify the issue or issues the evidence is intended to address and demonstrate how the evidence is truly probative on those issues." (internal quotation marks and citation omitted)). Defendant's proffered relevancy for these statements, that C.K. made statements for shock value regardless of truth and that the allegations against Defendant were such

26

statements, is simply the type of character evidence that is prohibited under our rules of evidence. *See* Rule 11-404(A)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."). Defendant's defense seemed to be nothing more than attempting to portray C.K. as having a trait, making shocking statements, and the allegations against Defendant were actions in conformity with this trait. *See Johnson*, 1997-NMCA-036, ¶ 33.

{35}    Regarding all the categories of evidence the district court suppressed, Defendant primarily relies on *Stephen F.*, 2008-NMSC-037, ¶ 37, for his argument that the district court unduly restricted C.K.'s cross-examination. In *Stephen F.*, the state charged the defendant with the rape of a sixteen-year-old victim, although the defendant maintained that the sex was consensual. *Id.* ¶¶ 2-3. The defendant sought to cross-examine the victim at trial about a previous incident in which she engaged in consensual sex and was punished by her parents. *Id.* ¶ 3. The defendant argued that the previous incident and subsequent punishment established that the victim had a motive to lie in order to avoid punishment for engaging in sexual intercourse with the defendant. *Id.* The district court restricted the defendant from cross-examining the victim about the prior incident, ruling that the prejudicial aspects outweighed the probative value. *Id.* ¶ 5. Our Supreme Court reversed, holding that the district court

27

failed to "accord the proper weight to [the defendant's] constitutional right" to confrontation. *Id.* ¶ 37.

{36}     This case is different from *Stephen F.* In *Stephen F.*, the defendant established that the testimony he sought to introduce was relevant to a defense separate from the issue of the character of the victim. The defendant's theory of admissibility, the witness's motive to lie in that particular case, was not based on an impermissible character inference. The same is true for other cases in which a court has held that a trial court has unduly restricted a defendant's right to cross-examine an adverse witness. *See, e.g.*, *Davis*, 415 U.S. at 310, 317 (holding that the defendant should have been allowed to cross-examine an eyewitness about potential bias when the witness was on probation and therefore may have made a hasty identification of the defendant as the perpetrator in order to shift suspicion); *Martinez*, 1996-NMCA-109, ¶¶ 2, 8, 21 (holding that the defendant should have been allowed to cross-examine a confidential informant about potential bias when the confidential informant had pending criminal charges and the defendant wished to inquire whether he had a deal with the prosecutors for testimony). In this case, Defendant has not established that C.K. had a motive to lie or a reason to lie about the allegations against Defendant aside from an inference based on C.K.'s character, interests, and propensity to make statements for shock value.

28

**{37}** The district court also found that, assuming some relevance, the prejudicial effect outweighed the probative value under Rule 11-403 NMRA. In determining whether a defendant's confrontation rights are violated, we likewise balance a defendant's "right to a fair trial . . . against the potential prejudice to the truthfinding process itself." *Johnson*, 1997-NMSC-036, ¶ 25 (internal quotation marks and citation omitted). As our Supreme Court has categorically stated, although relevant, the prejudice of character evidence outweighs the probative value. *State v. Martinez*, 2008-NMSC-060, ¶ 23, 145 N.M. 220, 195 P.3d 1232 (stating that the limitation on character evidence did not arise because such "evidence lacked logical relevance, but because of its substantial prejudicial effect"). The district court did not abuse its discretion in its rulings on the State's motion in limine.

**CONCLUSION**

**{38}** We hold that (1) the State presented sufficient evidence to support Defendant's convictions for two counts of CSPM, sexual exploitation of a minor, and CDM for providing pornographic materials to C.K.; (2) the district court's judgment did not deprive Defendant of due process or his rights under double jeopardy because the evidence supported the jury verdict that the crimes occurred during the time periods alleged in the amended indictment; (3) the district court did not abuse its discretion in determining that C.K. was competent to testify at trial and therefore denying

Defendant's motion to suppress; and (4) the district court did not abuse its discretion by infringing on Defendant's right to confrontation in granting the State's motion in limine restricting the cross-examination of C.K.  Accordingly, we affirm.

{39}    **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER , Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**JONATHAN B. SUTIN, Judge**

30