This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-35901**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RANDY ROMERO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**James L. Sanchez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

**{1}** Defendant Randy Romero appeals his conviction for two counts of perjury, arguing that (1) there was insufficient evidence to establish the falsity of Defendant's sworn statements; and (2) that the conviction for two counts of perjury for a single course of conduct subjected him to double jeopardy. For the reasons discussed below, we agree that there was insufficient evidence to establish the falsity of Defendant's

sworn statements. Because we reverse Defendant's conviction on sufficiency grounds, we need not reach the double jeopardy issue.

**Background**

**{2}**     Defendant was charged with two counts of perjury, pursuant to NMSA 1978, Section 30-25-1(A) (2009), based on statements he made under oath during a preliminary hearing in which George Bond was charged with murdering a person during a drive-by shooting on July 13, 2014. On July 25, 2016, the State presented its perjury case against Defendant, submitting into evidence: (1) Defendant's unsworn police interview from August 15, 2015; (2) the transcript of the preliminary hearing testimony held on November 23, 2015; and (3) testimony from LLPD Sergeant John Valdez and former senior investigator with the 13th Judicial District Attorney's office, Mark Torres. Defendant offered no evidence or testimony. The jury convicted Defendant on both counts of perjury. We discuss additional facts below as necessary to address Defendant's arguments on appeal.

**Discussion**

**{3}**     The first issue presented by Defendant is whether there was insufficient evidence to establish the first element of perjury: the falsity of the sworn statements. Defendant argues that the State failed to provide evidence that his sworn statements at the preliminary hearing were false, and only presented evidence that his testimony was inconsistent with his prior unsworn accusation of the grand jury's target, George Bond. We agree and conclude that the State failed to present sufficient evidence to establish the offense of perjury.

**{4}**     "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "In reviewing whether there was sufficient evidence to support a conviction, we resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.* (internal quotation marks and citation omitted). "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Garcia*, 2009-NMCA-107, ¶ 21, 147 N.M. 150, 217 P.3d 1048 (internal quotation marks and citation omitted).

**{5}**     Our jury instructions establish the essential elements of perjury to include (1) a false statement made under oath, (2) knowledge that the statement was untrue, and (3) that the false statement was material to the issue involved in the proceeding. UJI 14-1401 NMRA. "Requirements of proof in a perjury case are the strictest known to the law," and begin with the rebuttable "presumption that one will tell the truth when under

oath." *State v. Naranjo*, 1979-NMCA-150, ¶ 43, 94 N.M. 413, 611 P.2d 1107, *rev'd in part on other grounds*, 1980-NMSC-061, 94 N.M. 407, 611 P.2d 1101. With respect to the element of falsity, the State is not entitled "to a conviction for perjury under this rebuttable presumption merely on proof that statements under oath were at variance with previous unsworn statements." *Id.* Rather, where the prior inconsistent statements were unsworn, proof of the falsity of the sworn statements requires corroboration in the form of either the testimony of two witnesses, or "the testimony of one witness supported by corroborating evidence or circumstances[,]" that goes "beyond slight or indifferent particulars." *State v. Borunda*, 1972-NMCA-018, ¶ 7, 83 N.M. 563, 494 P.2d 976 (internal quotation marks and citation omitted). Finally, a perjury indictment, like other indictments, "must embrace every element of the offense in the language of the statute with sufficiently definite averments to advise the accused with reasonable certainty of the crime with which he is charged, to enable him to prepare his defense, [and] to protect him against a subsequent prosecution for the same offense." *Naranjo*, 1979-NMCA-150, ¶ 11.

**{6}** Here, contrary to the directive set forth in *Naranjo*, the State did not identify the allegedly perjurious statements with specificity either in the indictment, or at trial. Instead, the grand jury indictment contained the following two identical "Count 1" charges, which did not include the allegedly perjurious statements:

> Count 1: Perjury . . . on or about November 23, 2015, in Valencia County, New Mexico, the above-named [D]efendant did make a false statement under oath or affirmation which was material to the issue or matter involved in the course of [an] official proceeding, and [D]efendant knew such statement to be untrue[.]

**{7}** At trial, defense counsel moved to dismiss one charge because "there [are] no facts or anything that would allow us to distinguish from the first count and the second count one." The State responded that the grand jury was asked "two very specific issues. One, whether or not [D]efendant ever saw . . . George Bond . . . and two, whether or not [Defendant] ever saw the gun." The district court stated that in its introductory remarks to the jury, it would "just say that [Defendant] is charged with perjury. I will not say two counts of perjury[.]" The court told counsel that "at the end of the State's case, we'll have plenty of time for [defense counsel] to argue" whether Defendant's due process rights had been violated as a result of the confusion.

**{8}** In its opening statement, the State told the jury that the transcript from the preliminary hearing contained "two very specific questions, bits of information that were attempted to be elicited. Did you see George Bond in the vehicle? Was George Bond there? And did George Bond have a gun and/or use it?" Then, at the start of closing, the State argued to the jury that "basically there are two things at issue. Count one, did [D]efendant lie under oath when he said, I don't know if George Bond was in that car[. . . and Count two] that he never saw the gun shot, actually never even saw the gun." Later in its closing, the State contended that "after you take the time, you'll agree that [Defendant] lied on two very important issues when coming in front of the district court

judge, . . . whether or not he had seen Randy Romero (sic) in the car that night, and whether or not he had seen Randy Romero (sic) with the gun that night." These muddled statements, in which the State misnamed Defendant, were followed by identical generic instructions to the jury stating that the State had to prove beyond a reasonable doubt, each of the following elements of the crime:

1.     [D]efendant made a false statement under oath or affirmation to the 13th Judicial District Court,

2.     [D]efendant knew the statement to be untrue,

3.     The false statement was material to the issue or matter involved in the judicial proceeding, which means the statement had a natural tendency to influence the decision of the [d]istrict [c]ourt [j]udge,

4.     This happened in New Mexico on or about the 23rd day of November, 2015[.]

{9}     The jury instructions provided no distinguishing details regarding which allegedly perjurious statement was to be considered for each charge. Even in its brief, the State does not identify which specific statements gave rise to the perjury charges, stating only that, "Defendant denied having knowledge of George Bond's presence in the vehicle at the time of the shooting, denied seeing George Bond in possession of the gun, and denied seeing anyone shoot out of the vehicle."

{10}     Regardless of which statements the State alleges are perjurious, however, the State failed to present sufficient evidence at trial that Defendant's contradictory statements constituted the crime of perjury. At most, the State only presented evidence that Defendant's testimony at the grand jury proceeding was inconsistent with his prior unsworn statements given during a police interrogation. We explain.

{11}     On August 15, 2015, Sergeant John Valdez and another detective interrogated Defendant, who was in custody on unrelated charges, about the drive-by shooting. After being repeatedly told by Sergeant Valdez that "a lot of people" said Defendant was the murderer, Defendant acknowledged being in the car, and stated that George Bond was also present and seated in the rear driver's side seat. Initially, Defendant repeatedly denied being the shooter, but finally said, "George had the gun." He also eventually told Sergeant Valdez that George Bond "shot a gun out of the car." At the end of the interrogation, Defendant told the officers that he would not testify for them, and that he was going to be killed for accusing George Bond. We note that at no point during the interrogation did the officers threaten to charge Defendant with the murder nor did they suggest any particular answer to their questions of Defendant.

{12}     Three months later, on November 23, 2015, Defendant testified under oath at the preliminary hearing to determine whether there was probable cause "to believe that George Bond has committed the alleged offenses." During questioning by the State,

Defendant gave evasive responses, stating alternatively that he did not remember who was in the car, that he was "not sure if George Bond was in the car," that he did not remember if George Bond was present at all, and he did not state that George Bond possessed a gun or shot it. When confronted with his prior statements given during the police interrogation, Defendant testified that the officers told him the information and he agreed with the officers because he "was afraid of being charged with murder that day."

**{13}**  Defendant's perjury trial took place on July 25, 2016. As noted, the State's evidence consisted of the testimony Sergeant Valdez, and Mark Torres, a senior investigator with the 13th Judicial District Attorney's office. In addition, the State played "bits and pieces" of the audio recording of the interrogation and read into evidence portions of the transcript from the preliminary hearing. Initially, Sergeant Valdez's testimony was limited to establishing the foundation for the August 15, 2015, recording to be admitted into evidence. After the audio recording was played in open court for the jury, Sergeant Valdez again testified, reiterating statements that Defendant made during the interrogation. Sergeant Valdez also testified to his opinions and conclusions regarding the murder on July 13, 2014, based on his investigation. Sergeant Valdez based his opinions solely on interviews of other witnesses in the murder case, none of whom testified in Defendant's perjury trial. Following Sergeant Valdez's testimony, Mark Torres, who was present at the preliminary hearing, testified solely to provide a foundation for admission of the August 23, 2015, preliminary hearing transcript.

**{14}**  On appeal, the State contends that Defendant's prior, unsworn inconsistent statements were sufficient evidence to prove the falsity of Defendant's sworn statements at the preliminary hearing. We are not persuaded. The State relies on cases discussing proof of the falsity of a sworn statement and whether such proof can be based on circumstantial evidence. For example, the State cites *United States v. Sweig*, which discusses primarily whether a defendant's knowledge of the falsity of his statements (the second element in a perjury charge) can be proved through circumstantial evidence. 441 F.2d 114, 117 (2nd Cir. 1971). Similarly, the one New Mexico case the State cites, *State v. Montoya*, also deals with the knowledge element, holding that it may be proved by circumstantial evidence of the act of lying. 1996-NMSC-224, ¶ 10, 77 N.M. 129, 419 P.2d 970. But, circumstantial evidence is not the issue in this case. And before reaching the knowledge element, the State must prove the lie. Accordingly, the State must prove at the outset, with sufficient evidence that is "strong, clear, convincing and direct," the element of "falsity of the statement under oath." *Naranjo*, 1979-NMCA-150, ¶¶ 43-44. And as *Naranjo* instructs, the evidence must be "based upon proof beyond a reasonable doubt [and e]vidence which is merely probable, is not enough." *Id.* ¶ 44. It is on this element that the State failed to prove the falsity of Defendant's statements with sufficient evidence.

**{15}**  Simply stated, Defendant's prior inconsistent statements—not made under oath—were not a sufficient point of comparison to demonstrate that the later sworn testimony was false. Rather, in order to convict Defendant of perjury the State was required to prove falsity more than just by reference to the mere inconsistency of the prior statements. It did not. In fact, the State presented no independent evidence to

establish that the allegedly perjured statements were false, or that Defendant's prior statements were true. *See Borunda*, 1972-NMCA-018, ¶ 7 (requiring an affirmative presentation of evidence regarding proof of falsity). Rather, the State merely showed a conflict with statements Defendant made that were not under oath. Given the absence of contrary evidence of falsity, the presumption that Defendant spoke truthfully under oath must prevail and the State is not entitled to a conviction of perjury.

**{16}** To the extent the State argues that "[t]he falsity of Defendant's sworn statements was established by sufficiently compelling circumstantial evidence," we disagree. The State identifies other inconsistencies in Defendant's testimony; however, these alleged inconsistencies are neither material nor do they corroborate the falsity of the two statements that formed the basis of the perjury charge. In sum, the State failed to present independent evidence that Defendant's unsworn statement was true, or that his sworn statement was false. At most, the State established that Defendant testified inconsistently with a prior, unsworn statement, insufficient to prove beyond a reasonable doubt that the under oath statement was false.

**{17}** The second issue raised by Defendant on appeal is whether the conviction for two counts of perjury for a single course of conduct subjected Defendant to double jeopardy for unitary conduct. Because we reverse Defendant's conviction on sufficiency grounds, we need not reach the double jeopardy issue.

**Conclusion**

**{18}** We reverse.

**{19} IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**MICHAEL D. BUSTAMANTE, Judge Pro Tempore**