This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37997**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JAIME RENE MIRANDA-AGUIRRE,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Daniel A. Bryant, District Judge**

Hector H. Balderas, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Victor E. Sanchez, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**    Jaime Rene Miranda-Aguirre (Defendant) appeals his conviction for one count of perjury, contrary to NMSA 1978, Section 30-25-1 (2009). On appeal Defendant argues (1) that his right to speedy trial was violated, (2) he received ineffective assistance of counsel, and (3) the evidence is insufficient to support his conviction. We affirm.

**BACKGROUND**

**{2}** On June 20, 2016, Defendant was indicted on one count of perjury relating to statements he made during an evidentiary hearing in a domestic relations case. Six witnesses testified during Defendant's November 13, 2018 jury trial, including Defendant, New Mexico State Police Sergeant Roberto Diaz, United States Border Patrol Agent Sergio Angeles, Abigail Nevarez, Ana Maria Navarro Gallegos, and Nohemi Navarro.

**{3}** Ana Gallegos identified Defendant in court as Beto, and testified that she met Defendant five years prior to the hearing. About a year and a half after meeting Defendant, Gallegos attended a hearing on an order of protection that she filed against Defendant. A redacted recording of that hearing was admitted as an exhibit and played for the jury. The exhibit recorded the district court judge identifying the respondent in the case, Heriberto Herrera, as being present in the court, asking the respondent questions, and the respondent's responses. Gallegos identified Defendant as the Heriberto Herrera who attended the hearing.

**{4}** Gallegos's mother, Maria Navarro was present at the order of protection hearing and testified that Defendant identified himself as Heriberto Sanchez Herrera and denied going by any other name during the hearing.

**{5}** In December 2014, Sergeant Diaz assisted with a video recorded interview of Defendant. A portion of the interview was admitted as an exhibit and played for the jury. During the interview, Defendant identified himself as Jaime Rene Miranda-Aguirre and provided a birthdate of August 16, 1983. When asked by Sergeant Diaz whether he went by the names Heriberto or Beto, Defendant replied, "No."

**{6}** Agent Angeles testified that he encountered Defendant in April 2016, at which time Defendant initially identified himself as Heriberto Herrera. Agent Angeles knew Defendant was not being truthful about his identity because he had previously located a United States Passport application for an individual identified as Heriberto Herrera and the photograph submitted with the passport application was not Defendant. Agent Angeles showed Defendant Heriberto Herrera's photograph. Defendant stated that he did not know who the person in the photo was but later admitted that his real name was Jaime Rene Miranda-Aguirre.

**{7}** Abby Nevarez testified that when she first met Defendant, he introduced himself as Beto. At the time of trial she had known Defendant for five years and he was the father of her son. Defendant told Navarez his real name was Jaime Rene Miranda-Aguirre when they were deciding what to name their son. Defendant told Nevarez that he used the name Heriberto so that he could remain in the United States and had received documents with the false name from the real Heriberto's father.

**{8}** Defendant testified on his own behalf and admitted that he told Sergeant Diaz that his name was Jaime Miranda Aguirre and that he did not go by any other name. Defendant also admitted that during the order of protection hearing he claimed he did not go by any name other than Heriberto Herrera.

**{9}** The jury convicted Defendant of perjury. The district court sentenced Defendant to eighteen months imprisonment and applied 942 days of presentence confinement credit to the sentence. This appeal followed. We reserve discussion of facts relevant to Defendant's speedy trial and ineffective assistance of counsel claims where appropriate in our analysis.

## DISCUSSION

**{10}** We begin our analysis with Defendant's assertion of a violation of his right to a speedy trial. We then address Defendant's claims of ineffective assistance of counsel. And finally, we address the sufficiency of the evidence supporting Defendant's conviction.

### Speedy Trial

**{11}** Defendant argues that his right to a speedy trial was violated resulting in prejudicial pretrial incarceration. Defendant did not preserve this issue and therefore requests that we review this claim for fundamental error. *See State v. Smith*, 2016-NMSC-007, ¶ 57, 367 P.3d 420 (reviewing an unpreserved speedy trial claim for fundamental error). In deciding whether to address a speedy trial violation claim raised for the first time on appeal the appellate court considers whether there was such "a striking violation of the constitutional right" that it would be appropriate to do so. *State v. Rojo*, 1999-NMSC-001, ¶ 53, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted); *see also* Rule 12-321(B)(2)(c) NMRA (providing for discretionary review of issues involving fundamental error). Given the approximately twenty-nine month delay in this case during which Defendant was incarcerated, some discussion of the underlying facts is necessary to explain why we have concluded that the delay in this case did not result in a "striking violation" of Defendant's speedy trial rights justifying review for fundamental error.

**{12}** "The right of the accused to a speedy trial is guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution." *State v. Spearman*, 2012-NMSC-023, ¶ 16, 283 P.3d 272. When determining whether a defendant has been deprived of the right to a speedy trial, we examine the four factors identified in *Barker v. Wingo*, 407 U.S. 514 (1972): "(1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. Although "[i]n analyzing these factors, we [ordinarily] defer to the district court's factual findings concerning each factor as long as they are supported by substantial evidence." *State v. Radler*, 2019-NMCA-052, ¶ 14, 448 P.3d 613 (internal quotation marks and citation omitted). Because Defendant did not raise the constitutional claim until this appeal, "there were no district court proceedings to develop fully the facts relating to the *Barker* factors, and the district court had no opportunity to weigh them." *State v. Valdez*, 1990-NMCA-018, ¶ 15, 109 N.M. 759, 790 P.2d 1040. We are left, therefore, to search

the record for striking violations of the speedy trial right that are apparent on the face of an incomplete record.

**Length of Delay**

**{13}** We first examine the length of delay. This is an objective factor apparent from the record. The determination of the length of delay serves two functions. First, the length of delay "acts as a triggering mechanism for considering the four *Barker* factors if the delay crosses the threshold of being 'presumptively prejudicial[.]' " *Serros*, 2016-NMSC-008, ¶ 22. Second, the length of delay "is an independent factor to consider in evaluating whether a speedy trial violation has occurred." *Id.* A delay is considered presumptively prejudicial "according to the complexity of [the] case: one year for a simple case, [fifteen] months for a case of intermediate complexity, and [eighteen] months for a complex case." *Id.*

**{14}** Both Defendant and the State agree that this is a simple case. Simple cases often "require less investigation and tend to involve primarily police officer testimony." *State v. Wilson*, 2010-NMCA-018, ¶ 24, 147 N.M. 706, 228 P.3d 490 (internal quotation marks and citation omitted). Given that there was a single perjury charge, six witnesses including Defendant, no significant evidentiary issues and no experts or scientific evidence, we agree that this is a simple case. *See State v. Laney*, 2003-NMCA-144, ¶ 15, 134 N.M. 648, 81 P.3d 591 (holding that a case with ten witnesses, three of whom were experts, was on the high end of the simple complexity range).

**{15}** Defendant was indicted and arrested on June 20, 2016, and brought to trial on November 13, 2018—a time span of approximately twenty-nine months. The delay exceeds the one year presumptively prejudicial delay threshold by approximately seventeen months. We therefore proceed to inquire further into the *Barker* factors. *See State v. Garza*, 2009-NMSC-038, ¶ 21, 146 N.M. 499, 212 P.3d 387.

**Prejudice Caused by Delay**

**{16}** Ordinarily under our speedy trial analysis we would next weigh the reasons for the delay, however, in evaluating whether the delay amounted to fundamental error, our review benefits from first considering the prejudice factor. Preventing prejudice to those accused is "[t]he heart of the right to a speedy trial[.]" *Id.* ¶ 12. The speedy trial right is intended "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* ¶ 35 (internal quotation marks and citation omitted). "As to the first two types of prejudice, some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial." *Id.* (alteration, internal quotation marks, and citation omitted). "[W]e weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Id.* "The oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Id.* Generally, "a defendant must show particularized prejudice of the

kind against which the speedy trial right is intended to protect." *Id.* ¶ 39. "However, lengthy and onerous pretrial incarceration may render affirmative proof unnecessary to find that the defendant suffered prejudice." *State v. Ochoa*, 2017-NMSC-031, ¶ 54, 406 P.3d 505. "[A] court can under certain circumstances presume that a defendant suffered some degree of prejudice even without affirmative proof." *Id.* ¶ 56. A finding of presumed prejudice, however, is not in and of itself dispositive of Defendant's speedy trial claim. *Id.* ¶ 50 (holding that the defendant was prejudiced as a result of extended pretrial incarceration, but noting, "this presumption does not dispose of the speedy trial claim").

**{17}** Defendant argues that he was prejudiced due to oppressive pretrial incarceration which exceeded the maximum sentence for perjury. There is nothing in the record demonstrating that Defendant suffered particularized prejudice. Defendant fails to direct our attention to where in the record this showing was made. Instead, Defendant relies solely on the twenty-nine month period of confinement, claiming that particularized prejudice should be found based solely on the fact that he was incarcerated pretrial for a period which exceeded the maximum sentence for his fourth degree felony charge of perjury. *See* § 30-25-1(B) (providing that "[w]hoever commits perjury is guilty of a fourth degree felony"); *see also* NMSA 1978, § 31-18-15(A)(13) (2016, amended 2019) (providing that a fourth degree felony is punishable by eighteen months imprisonment).

**{18}** Our appellate courts have held that lengthy pretrial incarceration periods can be presumptively prejudicial. For example, in *Ochoa*, our Supreme Court presumed, in a complex case, that the defendant was prejudiced where he was incarcerated for two years prior to a trial stating, "When, as in this case, a defendant was continuously incarcerated for an extended period of time, it requires no speculation to determine that the defendant suffered some prejudice." 2017-NMSC-031, ¶¶ 64, 57. Likewise, in *State v. Deans*, this Court presumed, in an intermediate complexity case, that the defendant was prejudiced where he was incarcerated for nearly twenty-eight months prior to trial. 2019-NMCA-015, ¶¶ 8, 24-26, 435 P.3d 1280. In *Ochoa* and *Deans*, the defendants did not present evidence of particularized prejudice. Like *Ochoa* and *Deans* we believe that Defendant's incarceration for twenty-nine months prior to trial in this simple case is sufficient to presume that he suffered some prejudice.

**{19}** Although we presume prejudice based on the length of Defendant's incarceration, "absent affirmative proof, we can only speculate as to the specific circumstances of his incarceration[,]" and "whether such prejudice was undue." *Ochoa*, 2017-NMSC-031, ¶¶ 60-61 (emphasis omitted). In this case, Defendant does not provide any argument as to anxiety or impairment of his defense due to pretrial incarceration and as previously observed relies entirely on the fact that his pretrial confinement exceeded the maximum sentence for perjury. We are unconvinced that prejudice arising from Defendant's pretrial confinement was undue.

**{20}** As the State points out, Defendant's incarceration coincided with his detention on an INS hold and a 364-day jail sentence in another matter. In addition Defendant was also incarcerated pending trial in another criminal case. Because Defendant was

simultaneously held on other matters, the prejudice he endured due to pretrial incarceration in this case was tempered by the fact that he would have been incarcerated regardless of this case. Consequently, Defendant's pretrial confinement, including the time beyond the maximum sentence for perjury, is not evidence of particularized prejudice. Therefore, without evidence of particularized prejudice, we weigh this factor only slightly in Defendant's favor. *See Ochoa*, 2017-NMSC-031, ¶ 64 (presuming prejudice where defendant was continuously incarcerated for two years but weighing prejudice only slightly in the defendants favor in the absence of a showing of particularized prejudice); *State v. Urban*, 2004-NMSC-007, ¶¶ 17, 135 N.M. 279, 87 P.3d 1061 (presuming prejudice where the defendant was incarcerated for twenty-seven months but concluding that the defendant was not subject to oppressive pretrial incarceration because he was incarcerated on other charges and determining that this factor did not weigh heavily against the State).

**{21}**   Because Defendant fails to show particularized prejudice, the three other *Barker* factors must weigh heavily against the State in order to establish a speedy trial violation. *See State v. Samora*, 2016-NMSC-031, ¶ 23, 387 P.3d 230 (citing *Garza*, 2009-NMSC-038, ¶ 39). For the reasons that follow, we conclude that Defendant has failed to show that the other three factors weigh heavily against the State.

**Assertion of Defendant's Right to Speedy Trial**

**{22}**   In analyzing whether Defendant asserted his right to a speedy trial, we "accord weight to the frequency and force of the defendant's objections to the delay . . . [and] also analyze the defendant's actions with regard to the delay." *Garza*, 2009-NMSC-038, ¶ 32 (internal quotation marks and citation omitted). "[P]ro forma motions are generally afforded relatively little weight in this analysis." *Urban*, 2004-NMSC-007, ¶ 16. Defendant argues that this factor weighs in his favor because he asserted his right to a speedy trial in three entries of appearance filed by his attorneys. Relying on *State v. Steinmetz*, 2014-NMCA-070, ¶ 62, 327 P.3d 1145, the State responds that Defendant's assertions of his right to speedy trial were pro forma demands following changes of defense counsel which contributed to delay and therefore they are not entitled to any weight

**{23}**   The State's reliance on *Steinmetz*, to avoid attributing Defendant any weight for asserting his speedy trial right is unavailing. Unlike the defendant in *Steinmetz*, there is nothing in the record to suggest that Defendant engaged in gamesmanship of asserting his right to a speedy trial while simultaneously moving to vacate trial settings and otherwise engaging in delay causing tactics. *See id.* ¶¶ 61, 62. Accordingly, we conclude that this factor weighs slightly in Defendant's favor. *See State v. Fierro*, ¶¶ 52-55, 2012-NMCA-054, 278 P.3d 541 (concluding that the assertion of the right to speedy trial weighed only slightly in the defendant's favor where pro forma demands accompanied multiple entries of appearance and the defendant contributed in part to the delay).

**{24}** As discussed above, absent a showing of particularized prejudice the three other *Barker* factors must weigh heavily against the State in order to establish a speedy trial violation. *See Samora*, 2016-NMSC-031, ¶ 23 (citing *Garza*, 2009-NMSC-038, ¶ 39). Consequently, because we weigh Defendant's assertion of his right to a speedy trial only slightly in his favor, and therefore only slightly against the State, we need not consider the remaining *Barker* factors to conclude that no striking violation of Defendant's constitutional right to a speedy trial occurred requiring review for fundamental error. *See Rojo*, 1999-NMSC-001, ¶ 53.

## Ineffective Assistance of Counsel

**{25}** Defendant argues that his attorneys, Todd Holmes and Jonathan Miller, were ineffective because both failed to file a motion or move the district court to dismiss the case based on a violation of Defendant's right to a speedy trial.

**{26}** "We review claims of ineffective assistance of counsel de novo." *State v. Pitner*, 2016-NMCA-102, ¶ 14, 385 P.3d 665 (internal quotation marks and citation omitted). "[T]here is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). "In order to establish a prima facie case of ineffective assistance of counsel on direct appeal, a defendant must demonstrate that: (1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *State v. Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134. "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. Because the record is frequently insufficient to establish whether an action taken by defense counsel was not reasonable or if an error caused prejudice, ineffective assistance of counsel claims are often better addressed in habeas corpus proceedings. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517.

**{27}** However, if on direct appeal a defendant makes a prima facie case for ineffective assistance of counsel on the basis of facts in the record, an appellate court can remand to the district court for an evidentiary hearing. *See State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068. A defendant makes a prima facie case when the defendant produces sufficient evidence to allow the trier of fact to infer the fact at issue and rule in the defendant's favor. *See id.* Defendant's arguments on appeal fail to establish a prima facie case of ineffective assistance of counsel.

**{28}** Relying on his speedy trial arguments, Defendant asserts that no reasonably competent attorney would have deemed a motion to dismiss unwarranted where length and reason for delay weigh heavily against the State and Defendant, having asserted his right, suffered undue prejudice. Defendant also contends that given the balance of the *Barker* factors, no plausible, rational strategy or tactic explains his attorneys' failure to move for, or file a motion for dismissal. Based on these contentions, Defendant

argues that he was prejudiced because there is a reasonable probability the district court would have dismissed the perjury charge. The State responds that Defendant's right to speedy trial was not violated therefore the failure to file a motion to dismiss was not ineffective assistance of counsel. We reject Defendant's ineffective assistance of counsel claims for two reasons.

**{29}** First, in light of our conclusion that Defendant's right to speedy trial was not violated counsel was not ineffective for not seeking dismissal on speedy trial grounds. *See State v. Chandler*, 1995-NMCA-033, ¶ 35, 119 N.M. 727, 895 P.2d 249 (stating that failing to file a motion that would prove futile does not constitute ineffective assistance of counsel), *modified on other grounds by State v. Vargas*, 2007-NMCA-006, 140 N.M. 864, 149 P.3d 961, *rev'd by* 2008-NMSC-019, 143 N.M. 692, 181 P.3d 684.

**{30}** Second, it is plausible that Defendant's attorneys' failure to move for, or file a motion for dismissal was part of rational strategy or tactic to delay Defendant's deportation. For example, in *State v. Castro*, our Supreme Court analyzed a similar situation in which a defendant argued both a speedy trial violation as well as ineffective assistance of counsel for failure to move for dismissal. 2017-NMSC-027, ¶¶ 1, 33-37, 402 P.3d 688. In that case, our Supreme Court recognized that the record lacked sufficient facts to address the defendant's claim on appeal. *Id.* ¶ 36. Specifically, the Court pointed out that the only evidence in the record pertaining to the claim was the defendant's affidavit describing his attorney's conduct and assertions made in the defendant's answer brief. *Id.* ¶ 35. The Court also emphasized that it did not have a response to the allegations from the defendant's attorney. *Id.* The Court stressed that "[a] prima facie case is not made when a plausible, rational strategy or tactic can explain the conduct of defense counsel" and acknowledged, "[d]elay is not an uncommon defense tactic." *Id.* ¶ 37 (quoting *Barker*, 407 U.S. at 521). Under this consideration, the Court posited that because "prejudice was minimal, it is plausible that [counsel] failed to raise [the defendant's] right to a speedy trial either in accordance with a trial strategy or to delay [the defendant's] possible deportation." *Id.* ¶ 37. Given the lack of facts in the record, our Supreme Court stated that the defendant's claims were more properly brought through a habeas corpus petition. *Id.* ¶ 36.

**{31}** Like *Castro*, in this case Defendant's prejudice was minimal and the record before us bares few facts on which we can rely to evaluate Defendant's claim. As in *Castro* we have Defendant's assertions made in his brief in chief but we do not have a response from either Holmes or Miller. Because Defendant was subject to an INS hold, as the Supreme Court acknowledged in *Castro*, it is plausible that Defendant's attorneys decided against filing a motion to dismiss. We therefore conclude that Defendant has failed to make a prima facie case for ineffective assistance of counsel. However, Defendant may pursue his claim through a petition for post-sentence relief under Rule 5-803 NMRA.

**Sufficient Evidence Supports Perjury Conviction**

**{32}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See Rojo*, 1999-NMSC-001, ¶ 19.

**{33}** To convict Defendant of perjury under Section 30-25-1(A), the State had to prove beyond a reasonable doubt that Defendant: "(1) made a false statement under oath or affirmation to the Twelfth Judicial Hearing Officer Peterson; (2) . . . knew the statement to be untrue; (3) the false statement was material to the issue or matter involved in the judicial proceeding, which means the statement had a natural tendency to influence the decision of the Twelfth Judicial Hearing Officer Peterson; and (4) [the offense] happened in New Mexico[.] *See* UJI 14-2501 NMRA. Relying on *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, Defendant exclusively challenges the sufficiency of the evidence showing that his false statement was "material to the issue or matter involved in the hearing concerning an order of protection[,]" and for that reason, we limit our review to evidence supporting the materiality of Defendant's false statement.

**{34}** We first briefly review orders of protection. To obtain an order of protection a victim of domestic abuse must petition the court and include a "sworn affidavit setting out the specific facts showing the alleged domestic abuse." NMSA 1978, § 40-13-3(B) (2008). Both the petition and affidavit necessarily must identify the person against whom a protection order is sought. In considering whether to grant an order of protection, the court takes into account the allegations and determines whether domestic abuse has occurred. *See* NMSA 1978, § 40-13-5(A) (2019). If the court grants an order of protection, it shall, among other things, order the party identified in the petition to "refrain from abusing the protected party[.]" *Id.* Thus, an accurate identification of the person against whom a protection order is sought is integral to the district court's consideration and the ultimate purpose of the order. *See Best v. Marino*, 2017-NMCA-073, ¶ 25, 404 P.3d 450 (stating, "[t]he purpose of an order of protection is to prevent future harm to a protected party by a restrained party").

**{35}** "A statement is material if it has a natural tendency to influence or the capability to influence the decision of the decision-making body to which it is addressed." *State v. Benavidez*, 1999-NMCA-053, ¶ 26, 127 N.M. 189, 979 P.2d 234, *vacated on other grounds*, 1999-NMSC-041, 128 N.M. 261, 992 P.2d 274. Given the process and purpose of domestic relations protection orders, we conclude that a person's true identify is material to a court's determination of the matter.

**{36}** At Defendant's trial sufficient evidence was offered to prove that Defendant's real name is Jaime Rene Miranda-Aguirre and that he provided a false name during the

hearing for an order of protection. During trial Sergeant Diaz testified that in an interview in another case, Defendant stated that his name was Jaime Rene Miranda- Aguirre and that he did not go by any other name including Heriberto. Agent Angeles testified that during an encounter with Defendant, he stated that his name was Heriberto Herrera, a name Agent Angeles knew to be false. Likewise, Nevarez, the mother to Defendant's son, testified that when she met Defendant he went by the name Heriberto Sanchez-Herrera but later discovered that his real name is Jaime Rene Miranda-Aguirre.

{37}    Gallegos testified that during the hearing on the order of protection, Defendant identified himself as Heriberto Sanchez-Herrera. Gallegos's mother, Navararro, also testified that Defendant represented himself as Heriberto Herrera and that he claimed he did not go by any other names. Additionally, the State introduced a recording of the hearing as State's Exhibit 3 and played the recording for the jury. The recording revealed that Defendant understood the nature of the proceedings and that the district court could issue an order of protection against Heriberto Herrera for up to one year. The recording further revealed that while under oath Defendant identified himself as Heriberto Herrera and that he denied going by any other names. Defendant also admitted to using a false name during the order for protection hearing.

{38}    The evidence showed that Defendant knowingly participated in an adjudicatory hearing on an order of protection sought against him while using a false alias, Heriberto Herrera, and that Defendant lied about his true identity when asked whether he went by any other names. Viewing this evidence in a light most favorable to the verdict a reasonable jury could have concluded that Defendant's false statements regarding his name during the adjudicatory hearing had the capability to influence the district court to issue an inaccurate order of protection which in turn impedes enforcement and undermines the purpose of such orders.

{39}    Accordingly, we hold that sufficient evidence supports the jurors finding that the false statements Defendant made regarding his name were material to the hearing on the order of protection.

**CONCLUSION**

{40}    For the forgoing reasons, we affirm Defendant's conviction of perjury.

{41}    **IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**BRIANA H. ZAMORA, Judge**

**JANE B. YOHALEM, Judge**